*SM*

1

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
CARL.WESCOTT@CAPITALIDE.AS
*IN PROPRIA PERSONA*
+1 276 773 7377

**RECEIVED**

NOV 2 1 2023 *SMB*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF ILLINOIS

### EASTERN DISTRICT

CARL A. WESCOTT,

             Plaintiff,

    vs.

UNITED AIRLINES;

           Defendants.

 + DOES 1 through 10

23-cv-16178
Judge Jenkins
Magistrate Judge Harjani
Civil Action No. CAT2
RANDOM

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

## VERIFIED COMPLAINT

Plaintiff Carl A. Wescott, proceeding *pro se*, complains of Defendant United Airlines, and in support of his complaint, alleges as follows:

## PARTIES

1. The Plaintiff is an individual who resides in Scottsdale Arizona.

2. Defendant United Airlines ("United", or "the Defendant") is a major US air carrier incorporated in Delaware and headquartered in Chicago, Illinois. Through its Star Alliance branded network, United Airlines partners with airlines such as Lufthansa, and they codeshare flights.

## JURISDICTION AND VENUE

3. This is an action for damages with three federal law issues that are federal causes of action:

4. The first lies in violations of the federal standard of care reflected in 14 CFR 250 (involuntary bumping during interstate travel).

5. The second lies in other violations of the federal standard of care reflected in 14 CFR 250 (negligence in security issues related to the Plaintiff).

6. The third federal cause of action is in violations of section 425(e) of the FAA Reauthorization Act of 2018 (Pub. L 115-254, October 5th, 2018), including a Final Rule issued by the Department of Transportation taking effect in April 2021: 86 FR 2534.

7. Supplemental jurisdiction over the Plaintiff's Illinois state law claims is pursuant to 28 U.S.C. § 1367(a). United Airlines has offices, employees and other *indicia* in this district (United is headquartered in Chicago, Illinois)

## CASE SUMMARY

This case concerns two rejections/bumpings that the Plaintiff experienced from United Airlines. It also concerns the Defendant's negligence in its duties to the Plaintiff with regard to the Plaintiff's safety and security, as a very good customer of United that is regularly a Premier 1K and

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

who has flown 2 million miles with United.

With regard to the two rejections/involuntary bumping incidents, on the same day in late June 2021, the Plaintiff was ejected from a domestic United flight from San Francisco to Phoenix, for no valid reason that United has yet provided. United then booked him on a flight 4.5 hours later, and then bumped the Plaintiff from that flight as well, telling the Plaintiff he was banned from United (however, he wasn't banned).

With regard to the security issues, the Plaintiff has experienced significant safety and security issues with regard to a criminal gang, the Bob Block Criminal Gang, that has followed him around the world as he travels. Bob Block criminal gang members steal from the Plaintiff (including on United flights) and in hotel rooms at his destinations in the United States, Europe, Africa, and the Middle East. Mr. Block and his criminal gang members have flown on United flights and on United codeshare flights with partners such as Lufthansa, Avianca, EgyptAir, SwissAir, and TAP. Bob Block criminal gang members regularly violate the Plaintiff's privacy by accessing his United account on the web and via phone calls, to find out where the Plaintiff is traveling, and then quickly book passage, often on the same flights as the Plaintiff, and sometimes just before or after him. Gang members have stolen the Plaintiff's PlusPoints, sometimes fly as "Carl Wescott" with fake identifications, and in one case, Bob Block himself (Robert J. Block) even stole the Plaintiff's flight and travelled as him.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

## **ALLEGATIONS OF CONSPIRACY**

8.  Upon information and belief, there are even more individual Defendants currently unknown to Plaintiff, who shall emerge with the benefit of legal discovery.

9.  Plaintiff is informed and believes and thereon alleges that at all times material to this complaint, those individuals, in addition to acting for themselves individually, as well as for the benefit of their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

10. Plaintiff further alleges on information and belief that the acts and non-acts of each of the individual Defendants were fully ratified by each and all the Defendants.

11. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific individual Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

12. In addition, upon information and belief, beyond United Airlines, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION of EMOTIONAL DISTRESS;**

13. Plaintiff is informed and believes and thereon alleges that at times material to this Complaint, those corporate defendants, in addition to acting for themselves and for their own behalf, were acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

14. Plaintiff further alleges on information and belief that the acts and non-acts of each of the entity Defendants were fully ratified by each and all the Defendants.

15. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific entity Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## NARRATIVE AND SUMMARY OF FACTS – INVOLUNTARY BUMPINGS

### i.) First Wrongful Ejection followed by Bumping (two involuntary bumpings)

16. The First Wrongful Ejection and bumping ("the first Bumping") is summarized in Exhibit A, Letter to United Airlines.

17. On June 26, 2021 on an early morning flight from San Francisco to Phoenix that had not yet departed ("the First Flight") the Plaintiff was properly masked and conforming to all crew instructions. The Plaintiff was heading to Phoenix to see his mother and have family time.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION of EMOTIONAL DISTRESS;**

18. The Plaintiff had arrived at the airport two hours before the flight. The Plaintiff admits that on two occasions, while the aircraft was parked at the gate, his mask briefly slipped under his nose (but not his mouth). Twice, a male flight attendant pointed this out, and the Plaintiff immediately complied each time by pushing his mask up to fully cover his nose as well.

19. Later, the plane began to taxi towards the runway for takeoff, and the same flight attendant made a comment to the Plaintiff as he walked by. The Plaintiff softly made a trivial and harmless joke that that caused the two passengers to the left of him to laugh.

20. No one expressed any objection to the Plaintiff about his joke which did not involve any hazard to the airline and was neither sexually nor ethnically invidious, nor did anyone complain about the Plaintiff.

21. Perhaps three minutes after this, the airplane turned around and taxied back to the gate.

22. The Plaintiff was summarily ejected from the aircraft, without a reason being given.

23. More recently, a legal representative of United Airlines, Mr. Robert Braun, made various false, insulting, and defamatory claims against the Plaintiff that are lies and fabrications. The substances of those false allegations are that the Plaintiff was trying to escape from the aircraft, tried to open the Emergency Door, and asked for a parachute to jump out of the plane (Exhibit E).

24. It is quite possible that it was Mr. Robert J. Block, or another Bob Block Criminal Gang member, that made the original false claims on the United flights, or to Mr. Robert Braun. The

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

Plaintiff does not believe that United flight crew nor a United legal representative would just make up false allegations. They might have relied on Block or one of his gang member's false information and statements.

25. This is a Verified Complaint, and the Plaintiff is already certifying all facts under oath and the penalty of perjury.

26. The Plaintiff has nevertheless added further facts and clarity in his Sworn Affidavit (Exhibit E).

27. At no time did the Plaintiff go to the emergency exit door on that flight, or any of the flights in question (Exhibit E).

28. Or, perhaps more clearly, the Plaintiff did NOT go to the emergency exit door on the first flight the Plaintiff was involuntarily bumped from (Exhibit E).

29. The Plaintiff did NOT attempt to open the emergency exit door on the first flight he was involuntarily bumped from. (Exhibit E).

30. The Plaintiff did not want to parachute out of the first flight, nor did the Plaintiff ask for a parachute to parachute out (Exhibit E).

31. A United representative met the Plaintiff at the gate, apologized and said that she had booked the Plaintiff on the next available flight, which was about four and a half hours later. The Plaintiff asked the United representative why he was kicked off the flight.

32. The representative said she didn't know the details, except that apparently someone had complained about the Plaintiff.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION of EMOTIONAL DISTRESS;**

33. The representative said she was going to attempt to upgrade the Plaintiff on the next flight.

34. (The Plaintiff would have preferred to have been on the original flight, of course)

35. After almost four (4) hours of waiting at the airport, the same representative found the Plaintiff near the departing gate of his new flight.

36. The United representative informed the Plaintiff that he was banned from United, and that United had cancelled his new ticket, too ("the second Bumping").

37. Despite urgent inquiries from the Plaintiff, no explanation for the ban was offered. The Plaintiff notes that the ban was announced about four hours *after* United had apologized, rebooked the Plaintiff, handed him a new boarding pass, and told him he would likely be upgraded on the next flight to make his later travel a little more comfortable.

38. The Plaintiff ended up wasting about 16 hours of his day and having to purchase another ticket travelling that night, with several significant further ramifications.

39. The Plaintiff subsequently made a demand on United for compensation under 14 CFR 250.5 (a)(3) for the standard compensation of $1,550 for the first bumping/ejection.

40. The Plaintiff also mentioned the second bumping/cancellation ("the Bumping"), for which he believes he is due another statutory penalty (standard compensation) of $1550 under 14 CFR 250.5 (a)(3).

41. The statute states that that is the minimum amount of compensation due for each of these bumpings.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

8

42. The statutory penalties due ($3100) for these two flights do not address the Plaintiff's other causes of action. (The Plaintiff hopes that when United's counsel is reading these pleadings, that counsel shall instruct that first check of $3100 to be sent to Plaintiff while the rest of Plaintiff's issues are being adjudicated. The Plaintiff can provide wiring instructions. This will narrow our issues)

43. Thus far, United has failed and refused to compensate the Plaintiff for the two bumpings above, in violation of federal law.

44. On or about December 1, 2021, Connie from United called the Plaintiff.

45. Connie called not to arrange compensation, but instead, as Connie said, to provide information to the Plaintiff.

46. The first information Connie shared was that the Plaintiff had had two mask violations.

47. The Plaintiff was aware of that, and he pointed out to Connie that those alleged violations (where the mask slipped off the bridge of his nose, as masks do for the great majority of all passengers on each and every United flight) occurred while the equipment was parked at the gate, well before taxiing and the Plaintiff's ejection.

48. The two brief and alleged violations (that the Plaintiff admits did occur) could not possibly have been the reason for the Plaintiff's ejection. The door of the plane was still open and passengers were still boarding. Were those the reason, the plane would not (quite a bit later) have taxied and almost taken off.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

49. It's likely that 98% of the passengers on the flight had worse mask behavior than the Plaintiff.

50. In a Kafkaesque touch, Connie, who had told the Plaintiff she was calling not to compensate him but rather to provide information, then informed the Plaintiff that she had a security report with further details.

51. The Plaintiff asked for the details. Connie then informed the Plaintiff that she was not at liberty to share the details with the Plaintiff.

52. Apparently, the "information" that Connie called the Plaintiff to share was that she had further information that she could not share (Exhibit E).

53. Connie informed the Plaintiff that the only way he could get that information was via a legal process (Exhibit E).

54. Essentially, United called the Plaintiff and almost demanded that the Plaintiff sue United Airlines. (In Connie's defense, she first suggested a subpoena, which the Plaintiff, a legal layperson, cannot easily issue)

55. The Plaintiff was deeply humiliated by his public ejection from the flight as it conveyed to the other passengers that he had engaged in misconduct, placing the Plaintiff in a false light.

56. The Plaintiff was publicly humiliated; an entire day of his time was wasted; he did not arrive at his destination to fulfill his plans; he had to purchase another more expensive airline ticket. The Plaintiff was and is upset over these issues.

57. The Plaintiff has commenced this lawsuit in response. The Plaintiff is entitled to sue to recover

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

compensatory but not punitive damages. *Hansen v. Delta Airlines*, No. 02 C 7651 (N.D. Ill. Mar. 17, 2004), *Cordero v. Cia Mexicana De Aviation, S.A.* 681 F.2nd 669 (9th Cir. 1982).

58. Despite the Plaintiff's fondness for United Airlines, it is simply unacceptable not to address these issues and compensate the Plaintiff appropriately for damages sustained.

59. The Plaintiff has remained a loyal frequent United flyer through July 2023, but is now not only dissatisfied with United's handling of these issues, but even more so, with United's lack of followup as the Plaintiff seeks answers important to his safety and security.

60. The Plaintiff has essentially stopped flying United after 2,159,642 miles flown on United.

61. The Plaintiff has filed this lawsuit expecting to resolve his issues in a satisfactory manger, and also to get information that he will provide to law enforcement so that Block Criminal Gang members are indicted, prosecuted, and serve jail time.

62. Then, the Friendly Skies will be safer for the Plaintiff and all other United passengers.

63. At that point, the Plaintiff will be able to resume travel on United, and hopes to get to 3 million miles flown, then 4 million miles flown, and so on.

## NARRATIVE AND SUMMARY OF FACTS – SAFETY AND SECURITY ISSUES

64. Plaintiff has experienced significant safety and security issues with regard to a criminal gang, the Bob Block criminal gang, that has followed him around the world as he travels (Exhibit D, Background of the Bob Block criminal gang).

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

65. Bob Block criminal gang members steal from the Plaintiff (including on United flights) and in hotel rooms at his destinations in the United States, Europe, Africa, and the Middle East.

66. Mr. Block and his criminal gang members have flown on United flights and on United codeshare flights with partners such as Lufthansa, Avianca, EgyptAir, SwissAir, and TAP.

67. Bob Block criminal gang members regularly violate the Plaintiff's privacy by accessing his United account on the web and via phone calls, to find out where the Plaintiff is traveling, and then quickly book passage, often on the same flights as the Plaintiff, and sometimes just before or after him.

68. Bob Block criminal gang members likely were the ones to steal 120 PlusPoints from the Plaintiff in October 2022, stealing them on October 24th, October 25th, and October 30th, 2022. To do so, they would have had to commit many felonies per theft.

69. In several cases, where the Plaintiff was requesting information for his safety and security regarding past Block Criminal Gang, United has failed to respond for a year or so, despite many requests for the information.

70. Gang members sometimes fly as "Carl Wescott" with fake identifications.

71. In one case, the Plaintiff believes that Bob Block himself (Robert J. Block) even stole the Plaintiff's flight and travelled as him. Mr. Block, if he was indeed the culprit, had to have committed many felonies to do so.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**Further consequential damages**

72. Further consequential damages apply as United refused to pay damages in February 2022.

73. The Plaintiff had the conclusion of a consulting assignment bear fruit in February 2022.

74. After more than six (6) months of work, the Plaintiff was about to close a deal where his client was to receive $10.6 million. The Plaintiff would receive $636,000.

75. The Plaintiff, however, was short $38,900… if he had had $38,900, he could have paid the expenses related to the closing of a deal for his client, who would have received $10.6 million.

76. The Plaintiff contacted United Airlines (Exhibit F).

77. Since the Plaintiff was owed more than $60,000 just from wasted time and business interruption alone for the three involuntarily bumpings, the Plaintiff made an offer to United to settle for only $38,900.

78. The Plaintiff alleges that he has therefore sustained direct, or general damages from breaches of contracts, breaches of the covenant, and related tortious acts by the Defendant in an amount exceeding $38.9K.

79. The Defendant had thus far resisted addressing this situation.

80. Had they addressed the situation, the Plaintiff could have closed his other deal and received $636,000.

81. All three Defendants declined to pay what the Plaintiff needed to close his deal and receive $636,000, thus mitigating Defendants' damages.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

82. The Plaintiff did his best to mitigate damages, attempting to borrow $38,900, but he was unable to obtain the needed monies.

83. The Plaintiff has now lost the $636,000 of performance-based compensation he would otherwise have received.

84. The first two involuntary bumpings occurred in California, so the Plaintiff will quote California law including statutory law such as the California Civil Code ("CCC") as well as California settled law.

85. California law relating to special damages, sometimes called "consequential damages" are codified in part at CCC 3300 and explained in detail in *Arntz Contracting Co. v. Stm Paul Fire & Marine Co.* (1996) 47 Cal.App.4th 464, 489, *Greenwich SF LLC v Wong,* 190 Cal.App.4th 739 (2010).

86. Specifically, if a breaching party is made aware of damages arising out of collateral transactions, flowing from the breach, then that party may be liable for lost profits arising out of such collateral transactions.

87. The same principles apply in tort, in Illinois, in New York, and in federal court where underlying state law holds for certain aspects of legal complaints.

88. The $38,900 were *sine qua non* for the Plaintiff's $636,000 of then-earnings, now lost.

89. Defendants are now responsible for that additional $636,000 of damages, too, as the Plaintiff will further prove at jury trial.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

14

90. In order to right the scales of justice, the Plaintiff has had to file this legal complaint.

91. The Plaintiff is suing in part to vindicate the rights of obedient and orderly frequent flyers like himself.

92. He expects to receive not only compensation for his damages, but important information related to the Block criminal gang.

93. The Plaintiff has been seeking that information directly from United since 2022, but is not getting responses from United.

94. The Plaintiff will provide that information to law enforcement. After the Bob Block Criminal Gang members are in jail, the Plaintiff hopes to be able to safely travel again.

## **DEMAND FOR JURY TRIAL**

95. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

96. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

## **COUNT I**

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

15

**(Breach of Contract – United)**

97. The Plaintiff realleges paragraphs 1-94 as if fully set out herein.

98. By arbitrarily ejecting the Plaintiff from the First Flight and the Second Flight, United breached its contracts of common carriage.

99. As a proximate result of United's breaches of contract, the Plaintiff has sustained losses including one 16-hour day and increased travel expenses. All damages and amounts to be fully proven at jury trial.

100.         As a proximate result of the breach of contract, the Plaintiff has sustained losses as categorized above. All damages and amounts to be fully proven at jury trial.

101.         The Plaintiff has sustained significant consequential damages.


**COUNT II**

**Breach of the Covenant of Good Faith & Fair Dealing - United**

102.         The Plaintiff realleges paragraphs 1-94 as if fully set out herein.

103.         Every contract entered into in California and Illinois contains an implied covenant of good faith and fair dealing that prohibits either party from exercising contractual discretion in such a way as to deny a counterparty the benefit of its bargain.

104.         Pleading in the alternative, even if United did not breach its contracts of common carriage with the Plaintiff, United abused its contractual discretion in ejecting and rejecting the

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

Plaintiff from his purchased Flights.

105.     As a proximate result of United's breached covenant of good faith and fair dealing, the Plaintiff has sustained losses and damages, that he will fully prove at jury trial.

**COUNT III**

**(False Light Publicity - United)**

106.     The Plaintiff realleges paragraphs 1-94 as if fully set out herein.

107.     Per *Brennan v. Kadner*, 351 Ill.App.3rd 963 (1st.Dist. 2004) United portrayed the Plaintiff publicly, in a false light, by having him ejected and rejected from the First Flight and the Second Flight, with the First Bumping and the Second Bumping.  The ejection and denial of boarding implied some serious departure from proper or safe behavior on both flights.

108.     In the First Bumping ejection, the Plaintiff was publicly humiliated, and was embarrassed.  Any reasonable person in that situation would have felt humiliated and embarrassed.  Beyond the insinuation of having done something wrong, imagine feeling responsible for an entire planeload of passengers being significantly delayed, apparently (though not actually) due to your actions.

109.     In the Second Bumping, the Plaintiff experienced more humiliation as the United agent loudly bumped him and banned him in front of other passengers.  The First Bumping was far worse, however.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION of EMOTIONAL DISTRESS;**

110.     The Plaintiff does not yet know the facts for the first flight rejection, and wishes to avoid making a false claim himself, especially in a verified legal complaint, but leaves open the possibility that the mystery person or people responsible for his ejection on the First Flight (who have apparently made false and defamatory and incorrect complaints) also acted maliciously towards him or recklessly with disregard for the truth.

## COUNT VI

### Promissory Estoppel - United

111.     The Plaintiff realleges paragraphs 1-94 as if fully set out herein.

112.     When the Plaintiff returned to the gate after being ejected from the Flight, United's Representative unconditionally promised that the Plaintiff would be rebooked as quickly as possible ("the Promise").

113.     Indeed, United's Representative handed the Plaintiff a boarding pass shortly thereafter, for the next flight, about 4.5 hours later, and was talking about upgrading the Plaintiff, not that that would have made the situation right… but it was and is a sign that the Plaintiff had done nothing wrong.  (The United Representative could not explain what had happened with the ejection and why)

114.     United's Representative knew or should have known that the Plaintiff would rely on the Promise.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

115.     The Plaintiff in fact relied on the Promise to his detriment by not making other travel arrangements immediately.

116.     As a proximate result of United's breach of the Promise, the Plaintiff has sustained losses to be fully proven at jury trial.

## COUNT V

### Negligence under the Federal Aviation Act

117.     The Plaintiff realleges paragraphs 1-94 as if fully set out herein.

118.     The Federal Aviation Act of 1958, 48 U.S.C. 40102-49105, preempts all state standards of negligence and defines the standard of care for airlines. *Abdullah v. AM. Airlines, Inc.,* 181 F.3rd 363, 367 (3rd Cir. 1999).

119.     Accordingly, federal law is the appropriate source of the standard of care for airlines.

120.     The airline standard of care for bumping passengers is contained in the Tickets Act, 425 (e) of the FAA Reauthorization Act of 2018, Pub. L. 115-254 October 5, 2018, including a Final Rule issued by the Department of Transportation (86 FR 2534), taking effect in April 2021 (86 FR 2534, pages 2534-2539, Docket DOT-OST-2020-0251, RIN 2105-AE81, Document Number 2020-28001).

121.     United failed to meet the federal standard of care in the First Bumping in at least

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

19

two ways: (a) bumping the Plaintiff after he had been accepted at the gate and in fact boarded the aircraft and, (b) failing to offer the Plaintiff a rebooking and statutory compensation.

122.     United failed to meet the federal standard of care in the Second Bumping, by failing to offer the Plaintiff a rebooking, and by failing to offer or pay the Plaintiff his legally-required statutory compensation.

123.     As the Plaintiff's conduct was exemplary and obedient, his ejection should be subject to the bumping standard of care as opposed to the exercise of security protocols.

124.     As a proximate result of Defendants' failure to meet the federal standard of care, the Plaintiff has suffered embarrassment, humiliation, distress, inconvenience, and anxiety. The Plaintiff has lost time with his family, time to work, and has experienced lost income from business interruptions.

## COUNT IV

### Violations of 14 CFR 250, Involuntary Bumping

125.     The Plaintiff realleges paragraphs 1-102 as if fully set out herein.

126.     The Federal Aviation Act of 1958, 48 U.S.C. 40102-49105, preempts all state standards of negligence and defines the standard of care for airlines. *Abdullah v. AM. Airlines, Inc.,* 181 F.3rd 363, 367 (3rd Cir. 1999).

127.     Accordingly, federal law is the appropriate source of the standard of care for

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

20

airlines.

128.      14 CFR 250 sets out compensation for involuntarily bumped passengers.

129.      United failed to meet the federal standard of care in the First Bumping in at least two ways: (a) bumping the Plaintiff after he had been accepted at the gate and in fact boarded the aircraft and, (b) failing to offer the Plaintiff a rebooking and statutory compensation.

130.      In these errors, United is also in violation of 14 CFR 250.

131.      United failed to meet the federal standard of care in the Second Bumping, by failing to offer the Plaintiff a rebooking, and by failing to offer or pay the Plaintiff his legally-required statutory compensation.

132.      In these errors, United is once again in violation of 14 CFR 250.

133.      As the Plaintiff's conduct was exemplary and obedient, his ejection should be subject to the bumping standard of care as opposed to the exercise of security protocols.

134.      As a proximate result of the Defendants' failure to meet the federal standard of care, and of the Defendants' violations of 14 CFR 250, the Plaintiff has suffered embarrassment, humiliation, distress, inconvenience, and anxiety.

135.      The Plaintiff has lost time with his family, time to work, and has experienced lost income from business interruptions. The Plaintiff has not received his statutorily required compensation from Defendants, either.

136.      The Plaintiff has sustained significant consequential damages.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

21

137.     All allegations and damages to be fully proven at jury trial.

## COUNT VII

### (Negligence under the Federal Aviation Act, Security Lapses)

138.     The Plaintiff realleges paragraphs 1-102 as if fully set out herein.

139.     The Federal Aviation Act of 1958, 48 U.S.C. 40102-49105, preempts all state standards of negligence and defines the standard of care for airlines. *Abdullah v. AM. Airlines, Inc.,* 181 F.3rd 363, 367 (3rd Cir. 1999).

140.     Accordingly, federal law is the appropriate source of the standard of care for airlines.

141.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to repeatedly access his account and flight information online.

142.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to repeatedly access his account and flight information via calls to United agents.

143.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to repeatedly access his account and flight information via emails.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

22

144.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to repeatedly access his account for information and control aspects of his account with Mileage Plus representatives.

145.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to steal his possessions on flights while the Plaintiff was asleep.

146.     United failed to meet the federal standard of care for the Plaintiff's safety and security by allowing Bob Block criminal gang members to steal his luggage.

147.     As a proximate result of the Defendant's negligence and its failure to meet the federal standard of care, the Plaintiff has suffered the loss of many possessions, the loss of his valuable information, the loss of significant business, the loss of significant time.

148.     The Plaintiff has suffered embarrassment, humiliation, distress, inconvenience, and anxiety.

149.     The Plaintiff has lost time with his family, time to work, and has experienced lost income from business interruptions.

150.     The Plaintiff has not received his statutorily required compensation from the Defendant, either.

151.     The Plaintiff has sustained significant consequential damages.

152.     All allegations and damages to be fully proven at jury trial.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

23

**PRAYER FOR RELIEF**

(a) As to Count I for all damages proximately caused by United's breaches of contract;

(b) As to Count II for all damages proximately caused by the Defendant's breaches of the covenant of good faith and fair dealing;

(c) As to Count III for all damages proximately caused by Defendant United subjecting the Plaintiff to false light publicity and for the imposition of exemplary damages in an amount sufficient to punish and deter the Defendant from subjecting customers to false light publicity in the future;

(d) As to Count IV for all damages proximately caused by the United's breach of the Promise and that the Defendant be estopped to deny liability therefor;

(e) As to Count V for all damages proximately caused by Defendant United's failure to meet the FAA standard of care for bumping (e.g. no fault discretionary removal) of passengers in the First Bumping and the Second Bumping;

(f) As to Count VI, also for all damages proximately caused by Defendants' violations of 14 CFR 250 in both Bumpings;

(g) As to Count VII for all damages proximately caused by Defendant United's failure to meet the FAA standard of care for safety and security issues;

(h) That the Court order United to come up with an adequate solution to secure the Plaintiff's private and confidential information for the future, to protect him from Bob Block Criminal Gang Members and other criminals and ne'er-do-wells.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES) (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

24

1

(i)  For reasonable legal and paralegal fees and the costs of this action and;

2

(j)  For the reasonable value of the Plaintiff's time in representing himself (*quantum meruit*)

3

(k)  For the Plaintiff's future attorney expenses;

4

(l)  For such other and further relief as this Court may deem just and proper.

5

6

7

RESPECTFULLY SUBMITTED on November 17th, 2023

8

9

10

_____

Carl A. Wescott, *pro se*

11

12

13

14

15

**VERIFICATION**

16

I, Carl A. Wescott, under penalties provided by law pursuant to section § 1-109 of the Code of Civil

17

Procedure, as well as the federal laws of the United States of America, certify that the facts set forth
in this instrument are true and correct to the best of his knowledge and belief, except as to matters

18

therein stated to be on information and belief and as to such matters the undersigned certifies as

19

aforesaid that he verily believes the same to be true.

20

_____

Carl A. Wescott

21

22

23

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250**

24

**(INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA**
**REAUTHORIZATION ACT OF 2018 (INVOLUNTARY BUMPING; SECURITY ISSUES)**

25

**(PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE**
**COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY;**

26

**PROMISSORY ESTOPPEL & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

## **Exhibit A**

The basis for federal court is Plaintiff's allegations of three federal law issues and federal causes of action, encompassed in violations of two civil statutes:

The civil statutes are as follows:

- 14 CFR § 250 (INVOLUNTARY BUMPING);
- SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018)

It turns out we have complete diversity of citizenship (28 USC 1332) as well, with the Plaintiff a citizen of Arizona, and no defendant a citizen of Arizona.

Carl A. Wescott  (carl.wescott@capitalide.as)
8210 E. via de la Escuela
Scottsdale, AZ 85258

1

October 28th, 2021



United Airlines, Inc.
233 S. Wacker Drive
Chicago, IL 60606
United States
Laura.mandile@unitedairlines.com
Tobjorn.evnquist@unitedairlines.com

Re: claim for compensation for two involuntary deboardings

Dear Sir or Madam:

I am still, in general, a very happy United customer (Premier 1k, HL989459), and in fact just hit 2 million miles on United.

The travel operations remain superb and recently, for the most part, I've been experiencing even better service than I've ever had on United – and it was pretty darn good, prior.

I recently had two experiences that were subpar (to say the least) while traveling on United tickets – one is a Lufthansa issue that I've written Lufthansa about.

The other is that I was recently kicked off a United flight (and then had another cancelled) while having done nothing wrong. The relevant vernacular is "involuntary deboarding," which occurred twice in one day with no valid reason cited in each case, and in fact, no reason at all cited.

The purpose of this letter is to submit a claim, pursuant to 14 CFR 250 for compensation due to me, as dictated by federal law, in connection with my involuntary deboarding of the 8:30 am flight from SFO to PHX (my confirmation number ANNJ8G) on Saturday, June 26th, 2021, and then a second involuntary deboarding (described below, for the 1:10 pm flight). Exhibit A has the purchase information and eTicket number of my originally purchased flight, that 8:30 am flight, which was my first involuntary deboarding by United that day (and Exhibit B, the second one).

I boarded the plane early for the 8:30 am flight and took my seat. Twice over a period of perhaps 30 minutes, my mask dropped off my nose, and twice, the male flight attendant, whose name I do not know, requested that I correct that, which I did. While we were taxiing toward the runway for takeoff, the same flight attendant, walking by, noted that I was in compliance with my mask covering my nose as well. I affirmed that, and affirmed that I would remain in compliance, and then made a joke, which got laughs from the passengers to my left.

1

I've always been in fairly strict compliance with the federal mask mandates and have frequently noted that many other passengers are not. I was in compliance at this point and re-affirmed that I would remain in compliance.

Nevertheless, our plane turned around, taxi'd back to the gate, and I was involuntarily deboarded.

I was on my way to a family event in Phoenix that I would now miss, so obviously it was even more upsetting than this would ordinarily be. A United representative met me at the gate and said she had put me on the next flight (Exhibit B).

I asked her what had happened and she was not sure, except that she said another passenger had complained about me with a phone call. That seemed strange to me, and I asked her if she was sure about that, and she said no, but that she would find out why I was involuntarily deboarded. (It seemed strange, among other reasons, that someone could issue a valid complaint while not being in compliance with rules about cell phones)

The lady was apologetic about her lack of facts and lack of knowledge and said she would try to upgrade me for the next flight (as if that would make up for missing the family event I was going to).

Some time later that morning, a few hours later (near noon), the same United representative found me near the departing gate for the 1:10 pm flight from San Francisco to Phoenix, and told me that my ticket was being cancelled, I was being involuntarily deboarded, and that I was now banned from United. This was my second involuntary deboarding by United that day.

I asked her why, and she said she didn't know, and that she had been told to cancel my flight, deboard me from it, prevent me from boarding with my valid ticket that she had earlier provided me, and to inform me that I was banned from United.

I found that odd, given that I'm a decent customer and had done nothing wrong. At this point, I'd been at SFO for over 6 hours. The lady could not cite a reason that I was kicked off the original flight, nor a reason my new ticket was being cancelled (for my second deboarding as well), nor that I was apparently being banned from United (permanently or not).

At this point, I had completely missed the family event I was traveling for. I ultimately decided to go home anyways. There aren't too many options for travel on Saturday evenings. I ultimately purchased another United ticket, so apparently I wasn't banned from United as the lady had said (Exhibit C).

I took that flight without incident and ultimately made it home over 12 hours after my original anticipated arrival for the family event that I completely missed.

Unfortunately, my experience on the captioned original flight somewhat paralleled (at least emotionally, knowing I was being kicked off a flight for no reason and would miss the event I was traveling to) the horror of United Flight 4311 in which a physician was randomly bloodied and brutalized, to international revulsion.

2

Luckily, I avoided being assaulted and physical abuse by following all orders, including the one to deplane, however irrational they were.

You can imagine how shocking and unsettling this treatment would be to a longtime United customer, especially one traveling to a family event that I would now miss.

It would make more sense if there was a reason I was kicked off the original flight (poor sense of humor perhaps?). It would make more sense if there was a reason my second flight was cancelled (just for me... the flight did go off. Some form of discrimination, perhaps?). It would make more sense if there was a reason I was supposedly banned from United (luckily, I apparently was not, and was just being misinformed over and over from a lady who couldn't cite any fact, reason, law, rule, or regulation for my being treated poorly).

In short, United agreed to transport me to Phoenix. United then delphically exercised its broad discretion to eject me and offered to place me on another flight. United then, without explanation, repudiated this second commitment after I had waited four+ more hours. That's two involuntary deboardings in a row.

I have since learned that the FAA preempts common law remedies, much to the benefit of United as the value of my time and related opportunity costs would have vastly exceeded statutory remedies for breaching my contract of carriage. United agreed to assist me with alternate transportation, then repudiated that agreement. Under the circumstances, if I was being involuntarily deboarded due to oversold tickets, I would unambiguously be entitled to $873.60 (with a cap of $1,550 each time) in compensation under 14 CFR 250.5, per deboarding, or $1737.20).

Of course, each of these experiences was way worse than being deboarded due to an oversold flight, so presumably the compensation due should be higher.

I have been an appreciative and loyal customer and, I am trying to be a good sport about an aberrant experience during times that are challenging for all of us. I am sure I will have good experiences on United flights in the future, and that this is simply a series of mistakes when people were having bad days. I remain a loyal United customer.

I respectfully and emphatically submit, however, that I am due explanations, as well as compensation for this experience which represents a shocking departure from your usual lofty customer service standards.

Thank you in advance for finding a fair and just resolution of this unfortunate incident so we can both move on.

Sincerely,

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688

3

 Gmail

*EXHIBIT A*

carl wescott <carlwescott2021@gmail.com>

**eTicket Itinerary and Receipt for Confirmation ANNJ8G**
1 message

United Airlines, Inc. <Receipts@united.com>
To: CARLWESCOTT2021@gmail.com

Sun, Jun 13, 2021 at 11:27 AM

# UNITED

Sun, Jun 13, 2021

## Thank you for choosing United.
A receipt of your purchase is shown below. Please retain this email receipt for your records.

Note: There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

Confirmation Number:

# ANNJ8G

Sat, Jun 26, 2021
## 08:30 AM
San Francisco, CA, US (SFO)

Sat, Jun 26, 2021
## 10:23 AM
Phoenix, AZ, US (PHX)

Traveler Details

WESCOTT/CARL
eTicket number: 0162352856864
Frequent Flyer: UA-XXXXX459 Premier 1K®

Seats: SFO-PHX -----

Purchase Summary

Method of payment:
Date of purchase:

Visa ending in 4628
Sun, Jun 13, 2021

| | |
|---|---|
| Airfare: | 87.44 USD |
| U.S. Transportation Tax: | 6.56 USD |
| U.S. Flight Segment Tax: | 4.30 USD |
| September 11th Security Fee: | 5.60 USD |
| U.S. Passenger Facility Charge: | 4.50 USD |
| **Total Per Passenger:** | **108.40 USD** |

**Total:** **108.40 USD**

## Carbon Footprint

Your estimated carbon footprint for this trip is **0.12445 tonnes of $CO_2$.**

You can reduce your environmental impact by participating in our CarbonChoice program which supports projects that reduce greenhouse gases. Learn more.

## Get ready for your trip

Visit the Travel-Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

## Fare Rules

Additional charges may apply for changes in addition to any fare rules listed.

NONREF/NOCHGS/NOCBBG/NOASR

## MileagePlus Accrual Details

| Carl Wescott | | | | | |
|---|---|---|---|---|---|
| Date | Flight | From/To | Award Miles | PQP | PQF |
| Sat, Jun 26, 2021 | 636 | San Francisco, CA, US (SFO) to Phoenix, AZ, US (PHX) | 968 | 88 | 0 |
| MileagePlus accrual totals: | | | 968 | 88 | 0 |

## Baggage allowance and charges for this itinerary

| Origin and destination for checked baggage | 1st bag charge | 2nd bag charge | 1st bag weight and dimensions | 2nd bag weight and dimensions |
|---|---|---|---|---|
| Sat, Jun 26, 2021 San Francisco, CA, US (SFO) to Phoenix, AZ, US (PHX) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |

Baggage check-in must occur with United or United Express, and you must have valid MileagePlus Premier® 1K® membership at time of check-in to qualify for waiver of service charges for up to three checked bags (within specified size and weight limits).

## Important Information about MileagePlus Earning

- Accruals vary based on the terms and conditions of the traveler's frequent flyer program, the traveler's frequent flyer status and the itinerary selected. United MileagePlus® mileage accrual is subject to the rules of the MileagePlus program

- Once travel has started, accruals will no longer display. You can view your MileagePlus account for posted accrual

- You can earn up to 75,000 award miles per ticket. The 75,000 award miles cap may be applied to your posted flight activity in an order different than shown

- Accrual is only displayed for MileagePlus members who choose to accrue to their MileagePlus account.

- Our Premier Program changes January 1, 2020. If your itinerary includes travel with a scheduled departure in 2020, you may see our old Premier accrual metrics if

1) you booked prior to May 1, 2019 and are viewing an emailed receipt or 2) you booked prior to August 1, 2019 and are viewing a receipt online. The terms and conditions of Premier qualification can be found at united.com/qualify.

## eTicket Reminders

- **Check-in Requirement** - Bags must be checked and boarding passes obtained at least 45 minutes prior to scheduled departure. Baggage will not be accepted and advance seat assignments may be cancelled if this condition is not met.

 Gmail 

carl wescott <carlwescott2021@gmail.com>

**Your reservation has been canceled (ANNJ8G)**
1 message

United Airlines, Inc. <Receipts@united.com>
To: CARLWESCOTT2021@gmail.com

Sat, Jun 26, 2021 at 11:49 PM

# UNITED

Sat, Jun 26, 2021

# Your reservation has been canceled.

Please keep this email receipt and your confirmation number. You may have future flight credit. Make sure you visit our Important notices page for the latest information on travel flexibility, restrictions, and your ticket, as situations are changing due to coronavirus.

If you have a flight credit, you'll need to return to this reservation when you are ready to travel again. Just enter the confirmation number on My Trips, where you can also see the ticket value, expiration date and if change fees are waived based on a travel waiver.

Confirmation Number:

# ANNJ8G

Sat, Jun 26, 2021

# 01:10 PM

San Francisco, CA, US (SFO)

Sat, Jun 26, 2021

# 03:10 PM

Phoenix, AZ, US (PHX)

Flight Operated by Skywest Airlines dba United Express.

Traveler Details

WESCOTT/CARL
eTicket number: -----
Frequent Flyer: UA-XXXXX459 Premier 1K®

Seats: SFO-PHX 07A

Purchase Summary

Method of payment:
Date of purchase:

Visa ending in 4628
Sun, Jun 13, 2021

Airfare:                              87.44 USD
U.S. Transportation Tax:               6.56 USD
U.S. Flight Segment Tax:               4.30 USD
September 11th Security Fee:           5.60 USD

**UNITED**

*Exhibit C*

Thu, Oct 28, 2021

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

Note: There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

Get ready for your trip: Visit the Travel-Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

Confirmation Number:

# BRMD7M

Sat, Jun 26, 2021

## 06:30 PM

San Francisco, CA, US (SFO)

Sat, Jun 26, 2021

## 08:32 PM

Phoenix, AZ, US (PHX)

Flight Operated by Skywest Airlines dba United Express.

## Traveler Details

WESCOTT/CARL

eTicket number: 0162355097385

Frequent Flyer: UA-XXXXX459 Premier 1K®

Seats: SFO-PHX -----

## Purchase Summary

| | |
|---|---|
| Method of payment: | Visa ending in 4628 |
| Date of purchase: | Sat, Jun 26, 2021 |
| | |
| Airfare: | 189.77 USD |
| U.S. Transportation Tax: | 14.23 USD |
| U.S. Flight Segment Tax: | 4.30 USD |
| September 11th Security Fee: | 5.60 USD |
| U.S. Passenger Facility Charge: | 4.50 USD |
| | |
| Total Per Passenger: | 218.40 USD |
| | |
| Total: | 218.40 USD |

1/5

## **EXHIBIT D:** Background of the Bob Block Criminal Gang

Robert J. Block is a former attorney, now disbarred, who then turned to a life of crime. He used to work for me. In April 2018 I said something disparaging about his former girlfriend, Meisha M. Maze, now deceased. At that point Mr. Block ("Block") made threats about screwing up my life and killing me. I didn't take the threats seriously at the time.

This backgrounder will provide information on some of the leaders of the Bob Block criminal gang. The gang members have stolen from me many dozens of times (will write that up) and – not to be too dramatic about it - have attempted to murder me many times. The following is information that I either know, or believe in putting multiple pieces of information together.

I've received hundreds of death threats from Bob Block and members of the Bob Block criminal gang, advising me that Bob or his fellow gang members would kill me if I ever reported their crimes to the police. Thus, I've been silenced for some time… but since Bob Block and Block Criminal Gang members have been trying to kill me anyways, I've decided to report everything I know about to law enforcement.

I don't have much evidence for law enforcement investigators to verify my allegations about Bob Block criminal gang behavior, but I'm going to file a couple lawsuits and serve discovery and issue subpoenas. I'm confident the discovery responses and subpoena responses will provide me with useful evidence that I'm going to wrap up in a bow tie for law enforcement investigators, so that it is easy to move to indictments and prosecute the members of this criminal gang.

The Bob Block Criminal Gang members are San Francisco residents and also Arizona residents.

- Bob Block is Robert J. Block - this is the Robert J Block in question (a former Chicago attorney who was disbarred and then turned to a life of crime):
  https://robertjblock.wordpress.com/2012/02/07/hello-world/
- Jon Wagner is a Phoenix, Arizona resident who has cell phone +1 602 750-8127. I've seen Wagner in multiple countries and on my United flights and on flights of other airlines.
- Paul Jones owns or owned a car dealership in the Phoenix area.
- Kelly Lynch was associated with Paul Jones and the car dealership.
- Patty Boss is a San Francisco resident at 1005 Market Street #401. Before she turned to a life of crime, she was a composer and owned a music studio.
- Johnny Belko is a Phoenix resident who has followed me to Dubai and elsewhere to steal from me. I've seen him in San Francisco, Scottsdale, and Dubai. There's no such thing as a coincidence when I regularly see Block criminal gang members in multiple countries.

1

- Jared Heissemann has bought tickets in my United account to follow me around as I travel – I believe, but don't have proof yet, that Mr. Heissemann stole my identity and has "Carl Wescott" identification, like most other members of the Bob Block criminal gang (Bob Block, Jon Wagner, and Johnny Belko).
- Mark Rudolph is an Arizona resident. I don't know much about Mark, except that I have heard Block criminal gang members discussing Jared Heissemann and "Mark Rudolph" trying to kill me.

I know what seven of these eight people look like (all but Mark Rudolph) and have contact info for the majority of them. There are many other members of the Bob Block criminal gang, but I don't know most of them are.

Most use aliases regularly to commit their crimes. Bob Block, for example, is often "Jeremy Kee" and "Travis Arnovick" and likely has a multitude of identities. (Block, by the way, falsely tells people he is a FBI agent named "Jeremy Kee", shows a badge and more, and I believe gets into restricted areas in airports and gets access to other places and information he would not otherwise have).

Here is what I have experienced as a victim of the Bob Block criminal gang and all the criminal gang members:

- Dozens of thefts from my residence at 1005 Market #408, San Francisco, CA 94103: passports, laptops, printers, scanners, cell phones, cash (small amounts), clothes, books and many more items. With the laptops came a lot of my data which is quite valuable to me. Not only were my iPhones stolen, but also my iTunes account, contacts and more. I believe the Bob Block criminal gang has made extensive use of the data they stole. My physical possessions were stolen between April 2018 and August 2019 (This part is not relevant to United Airlines)
- The theft of essentially all my possessions at 750 Harrison Street – furniture, desk, fridge, more laptops, clothes, books, and cash (5000 Euros and about ~US $250) – this was in 2019. (This part is also not relevant to United Airlines except as background context).
- I believe many Bob Block criminal gang members stole my identity. My birth certificate was stolen, my passports, passport cards, and identifications were stolen. I believe Bob Block, Jon Wagner, Johnny Belko, and Jared Heissemann, among others, have "Carl Wescott" identification. They travel as me, steal my United credits and PlusPoints, steal my hotel credits and upgrades, use my credit cards and debit cards (cloned or stolen numbers) and more.
- Crazy as it sounds Bob Block and his criminal gang members follow me around, stealing from me and worse. To do so they have to seriously violate my privacy, I believe by viewing my United and other airline accounts, my hotels.com accounts, and more. I've experienced dozens of thefts from hotel rooms, where people used "Carl Wescott" identifications to get replacement card keys. They then enter my hotel room and steal – no surprise – cell phones, laptops, and many more items. They also steal from me on airplanes.

2

- Since they have a lot of my information/data/files and more, and because I have good business opportunities, including (as of now) signed contracts for over US $600 million of easy-to-close consulting success fees, I believe Bob Block and the Block criminal gang decided to kill me as part of stealing/taking over my business, with them thus being able to get millions of dollars or more in the future. It sounds pretty crazy, but it's happening.
- I believe they decided to kill me in ways that they think would be harder to prove (I'm glad they decided that, as otherwise, I would have been shot by someone at close range in 2021 or 2022).
- Since then, I've had many bullets shot at me (luckily, from further away in most cases); there have been snakes in my hotel rooms and outside my house ten (10) times; I've been attacked by snakes multiple times; I've been bitten by a poisonous snake once (I went to the hospital, got anti-venom, and lived); I've been poisoned multiple times (I now watch what I eat and drink extremely carefully).

I don't have proof at the moment for the majority of the crimes because I need to issue subpoenas to get the evidence to back up all these allegations.

Some crimes, like attempted murders by putting large poisonous snakes outside my house, will be difficult to prove without at least one cooperating witness. But Block criminal gang members accessing my United account and then immediately buying tickets on the same flight so that they can steal from me and worse should be easy to prove. For someone to be on the same flight as me once could be a coincidence. But I've seen Mr. Block, Ms. Lynch, Mr. Wagner, and Mr. Heissemann on many of my flights, and I've seen Mr. Belko in many states and countries. Similarly, Block criminal gang members stealing my PlusPoints and also stealing my flights should be easy to prove. Those crimes will also be easy for law enforcement to confirm, leading to indictments and then prosecution of Mr. Block and the Bob Block Criminal Gang members.

Carl Wescott, +1 276 773 7377, carl.wescott@capitalide.as

3

1  CARL A. WESCOTT
2  8210 E. VIA DE LA ESCUELA
   SCOTTSDALE AZ 85258
3  *in propria persona*
   CARLWSOJ@GMAIL.COM
   +1 936 937 2688

4

# UNITED STATES DISTRICT COURT

5

## NORTHERN DISTRICT OF CALIFORNIA

6

7  CARL A. WESCOTT,

8                    Plaintiff,

9

10                   vs.

11  UNITED AIRLINES, INC.;
    LUFTHANSA GROUP;

12  DOWNTOWN MEDICAL GROUP;

13

                     Defendants

14

Civil Action No. 1:22-cv-00442

**EXHIBIT E: SWORN DECLARATION AND AFFIDAVIT OF CARL A. WESCOTT**

15

16   I, Carl A. Wescott, first being duly sworn, affirm on oath, under the penalty of perjury of the laws

17  of Illinois and the United States of America:

18      1.  I am the Plaintiff in the case at bar.

19      2.  I am fifty-four (54) years old and if called upon to do so I would testify competently and

20          truthfully as followed below.

21

22      3.  In the meantime, my written testimony under the same oath is as follows:

23      4.  All the facts in my original legal complaint are true.

24      5.  Any beliefs and allegations stated, I believe to be true.

25

26

27

28

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

1

6. The major categories covered below are <u>All facts and allegations I have stated and made in my legal complaint,</u> potential consequential damages in two categories, the <u>completely fabricated allegations of Mr. Robert Braun, esq., a legal representative of United Airlines,</u> and <u>the truth related to Mr. Braun's wrongful, defamatory, and completely incorrect/fabricated allegations.</u>

<u>All facts and allegations I have stated and made in relevant paperwork</u>

7. All of the facts stated in my legal complaint are true.

8. All documents provided in my original legal complaint and in my amended legal complaint, are true and correct copies of the original document or email.

<u>Potential consequential damages in the first of two categories: business interruption</u>

9. When I was young, before a series of mistakes, I became somewhat wealthy, quickly amassing more than $100 million of assets.

10. I believe my time is still valuable.

11. As I can and will prove to the Court, I've recently billed a client $1250 per hour for work at the intersection of strategy, capital, and innovation.

12. I believe my time is quite a bit more valuable than that, and within about four months I expect to be able to prove that in Court, with evidence, based on current projects.

13. Thus, at minimum, the five or so days that were wasted by my involuntary bumpings are worth, at minimum, US $50,000.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

2

Potential consequential damages in the second of two categories

14. In February 2022, I had the opportunity to complete a consulting assignment based on performance.

15. I was to be paid $636,000.

16. I needed $38,900 to part to a third party for expenses related to the close.

17. I didn't have the money.

18. I notified United Airlines and Lufthansa Group, since they owed me money and I had filed the case at bar, hoping one of them would want to pay me.

19. I sent the Defendants the two attached letters in which I asked them to pay me the $38,900 so I could make that $636,000 and so they could mitigate damages (Exhibit F and Exhibit G).

20. I thought I sent one to DTMG too, but I can't find it right now.

21. United Airlines declined to pay me.

22. Downtown Medical Group declined to pay me.

23. Lufthansa Group declined to pay me.

24. I subsequently lost the opportunity to close that deal, and therefore, I lost the $636,000.

25. United Airlines cannot credibly argue that the damages I sustained were not foreseeable.

26. Downtown Medical Group cannot credibly argue that the damages I sustained were not foreseeable.

27. Lufthansa Group cannot credibly argue that the damages I sustained were not foreseeable.

Completely fabricated allegations of Mr. Robert Braun, a representative of United Airlines

28. On Saturday, April 2nd, 2022, I spoke to Mr. Braun.

29. He suggested that I should have tried to resolve my matter with United Airlines.

PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE
IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS
AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE

3

30. Mr. Braun obviously had no clue about the basic facts of this case.

31. Mr. Braun was unaware that I had sent letters to United Airlines (two examples are in the Exhibits, as I wrote to United about all three involuntary bumpings and refusals of air/transportation service for which I possessed valid tickets).

32. Mr. Braun was unaware that I had talked to United Airlines.

33. Connie, a customer service representative in Chicago, had called me to tell me that she had information for me about my three involuntary bumpings/deplanings and refusals of air transportation service.

34. Connie had previously provided me with exemplary customer service on another service issue and was just doing her job in calling me, likely at someone else's request.

35. I was upset at the time that Connie called to provide me with information, partially because the memories of the angst, wasted and lost time, inconvenience, embarrassment, and sympathetic anger on behalf of hundreds of other passengers bubbled up... but in retrospect, I'm now amused.

36. In my legal complaint I used the term "Kafkaesque", but the script could just as easily been written by Eugène Ionesco... or Eric Arthur Blair, better known by his pen name George Orwell.

37. That part of my legal complaint and now, amended legal complaint, is also true, in that Connie called me to tell me she had information for me, but she couldn't tell me what the information was without a subpoena or a legal complaint.

38. You could say that Connie had meta-information for me.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

4

39. In any case, Mr. Braun had advised me that I was a very good customer of United Airlines, and that I should have spoken to customer service, had no clue that I had spoken to United and to Connie, nor of the basic facts of this case.

40. Mr. Braun is correct that I've been a good customer of United. I've traveled a bit, and likely flown more than 5 million miles.

41. Per United, I've flown 2,059,768 miles on United, as of today.

42. Mr. Braun obviously had not read my legal complaint, though he was perfectly happy to just make up falsities (more on those later).

43. Connie, on behalf of United Airlines, essentially insisted that I had to file a legal complaint against United Airlines.

44. (As a *pro se* litigant *in propria persona*, I wasn't sure precisely what the procedure was and is to issue a subpoena duces tecum. As a *pro se*, I believe I would need to get such a subpoena stamped or approved by a Court).

45. Since United Airlines insisted that I file a legal complaint, here we are.

46. Mr. Braun told me that I was acting strangely on all three flights (incorrectly).

47. Mr. Braun told me that I went to the emergency exit door on all three flights and tried to open it (incorrectly).

48. Mr. Braun told me that I had asked for a parachute to get out on all three flights, while flying (incorrectly).

49. Mr. Braun told me that therefore, United Airlines was within its rights under federal law to deplane me on all three flights.

50. What a crock! I don't believe I've ever heard a more ridiculous series of false allegations.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

5

The truth in response to Mr. Braun's completely fabricated allegations

51. I don't believe I was acting strangely at all, though I was a little sleep-deprived on the first flight – I'd left my hotel before 6 am to catch my flight.

52. I'll let others be the judge of that... I look forward to Mr. Braun's testimony under oath and penalty of perjury, telling me how I was acting strangely... or, if there's no one that thinks I was acting strangely, then I'll look forward to Mr. Braun retracting his assertion, and an apology from him.

53. "Strangely" involves someone's opinion, so it's difficult to refute without facts and allegations from the eyes of a third party that has that belief, for any reason.

54. It's easier to handle the (incorrect, and absolutely wrong) "factual" allegations.

55. I did NOT go to the emergency exit door on the first flight I was involuntarily bumped from.

56. I did NOT attempt to open the emergency exit door on the first flight I was involuntarily bumped from.

57. I did not want to parachute out of the first flight, nor did I ask for a parachute.

58. I did NOT go to the emergency exit door on the second flight I was involuntarily bumped from.

59. I did NOT attempt to open the emergency exit door on the second flight I was involuntarily bumped from.

60. I did not want to parachute out of the second flight, nor did I ask for a parachute.

61. I did NOT go to the emergency exit door on the third flight I was involuntarily bumped from.

62. I did NOT attempt to open the emergency exit door on the third flight I was involuntarily bumped from.

63. I did not want to parachute out of the third flight, nor did I ask for a parachute.

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

6

64. I've NEVER gone to the emergency exit door on any United flight I've ever taken (on more than 2 million miles).

65. I've NEVER tried to open the emergency exit door on any United flight I've ever taken (on more than 2 million miles).

66. I've NEVER wanted to parachute out of any United flight I've ever taken, nor have I ever asked for a parachute.

67. I've NEVER gone to the emergency exit door on any flight I've EVER taken.

68. I've NEVER tried to open the emergency exit door on any flight I've EVER taken.

69. I've NEVER wanted to parachute out any flight I've EVER taken, nor have I ever asked for a parachute.

70. Frankly, anyone who tries to open the emergency exit door on a flight, compromising the safety of hundreds of passengers, should be arrested and should seek psychiatric help.

71. To imply anything to the contrary, is, frankly, insulting.

72. In California, it's a crime – a misdemeanor - for an attorney to lie to a judge, or to lie to other parties.

73. Apparently, Mr. Braun plans to attempt to mislead this Honorable Court in violation of the ethical strictures that he is supposed to be bound by, and in violation of ABA Model 3.3, Candor to the Tribunal.          RESPECTFULLY SUBMITTED on April 4th, 2022

FURTHER AFFIANT SAYETH NAUGHT.

Carl A. Wescott

**PLAINTIFF'S REPLY TO DEFENDANT MR. JEFFREY RAU's RESPONSE IN OPPOSITION TO PLAINTIFF'S RULE 37(d)(2) MOTION FOR ORDERS AND SANCTIONS RELATED TO DEFENDANT RAU'S DISCOVERY ABUSE**

7

February 22nd, 2022

( EXHIBIT F )

General Counsel
United Airlines
233 S Wacker Dr
Chicago, IL 60606
**Phone:** (773) 601-3350

Dear Counsel,

Please route this to a United Airlines attorney and have them reach out to me. I'd like to settle the lawsuit filed in USDC in Illinois if United is amenable.

As you are aware, I have sustained direct, or general damages from your breach of contract (and related tortious acts) in an amount exceeding $38.9K. You have, thus far, resisted addressing this situation.

You should be aware of California law relating to special damages, sometimes called "consequential damages" codified in part at CCC 3300 and explained in detail in *Arntz Contracting Co. v. Stm Paul Fire & Marine Co.* (1996) 47 Cal.App.4th 464, 489, *Greenwich SF LLC v Wong,* 190 Cal.App.4th 739 (2010). Specifically, if a breaching party is made aware of damages arising out of collateral transactions, flowing from the breach, then that party may be liable for lost profits arising out of such collateral transactions.

The purpose of this communication is to place you on notice that your failure to pay my general damages in the immediate future will imperil a collateral contract in which my anticipated profits are $636,000. Should you choose not to pay amounts contractually due, under California law it is highly likely that you will be liable for this amount as special or consequential damages.

The same principles apply in tort, in Illinois, and in federal court where underlying state law holds for certain aspects of legal complaints, as you know.

1

I respectfully suggest that it would be prudent to eliminate your exposure to my lost profits by promptly settling your contractual obligation and I am prepared to engage with you promptly and efficiently for the purpose of doing so.

Thank you for your consideration of these important points which are intended to mitigate my losses and avert a significant enhancement to your contractual liability.


Respectfully,

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688

2