# EXHIBIT B

1:22-cv-00442
Judge Pacold
Magistrate Judge Valdez
CAT 2 / Random

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
CARLWSOJ@GMAIL.COM
*IN PROPRIA PERSONA*
+1 936 937 2688

**RECEIVED**

JAN 2 1 2022 *CR*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF ILLINOIS

## EASTERN DISTRICT

| | |
|---|---|
| CARL A. WESCOTT,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED AIRLINES;<br>THE LUFTHANSA GROUP;<br>DOWNTOWN MEDICAL GROUP<br><br>Defendants.<br><br>+ DOES 1 through 10 | Civil Action No.<br><br>**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;** |

## VERIFIED COMPLAINT

Plaintiff Carl A. Wescott complains of Defendants United Airlines; the Lufthansa Group, and Downtown Medical Group, and in support of his complaint, alleges as follows:

## PARTIES

1. The Plaintiff is an individual who resides in Scottsdale Arizona.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

2. Defendant United Airlines ("United") is a major US air carrier incorporated in Delaware and headquartered in Chicago, Illinois. Through its Star Alliance branded network, United Airlines partners with airlines such as Lufthansa, and they "code-share" flights.

3. Defendant Lufthansa Group ("Lufthansa") is an *Aktiengesellschaft* or share corporation based in Cologne Germany, with an operating subsidiary in Chicago, Illinois.

4. Defendant Downtown Medical Group is a medical services provider that conducted a COVID-19 PCR test of the Plaintiff.

## JURISDICTION AND VENUE

5. This is an action for damages with two federal law issues that are federal causes of action:

6. The first lies in violations of the federal standard of care reflected in 14 CFR 250 (involuntary bumping during interstate travel).

7. The second federal cause of action is in violations of section 425(e) of the FAA Reauthorization Act of 2018 (Pub. L 115-254, October 5th, 2018), including a Final Rule issued by the Department of Transportation taking effect in April 2021: 86 FR 2534.

8. Supplemental jurisdiction over the Plaintiff's Illinois state law claims is pursuant to 28 U.S.C. § 1367(a). United Airlines and Lufthansa Group have offices, employees and other *indicia* in this district (United is headquartered in Chicago, Illinois)

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

2

## CASE SUMMARY

This case concerns three rejections/bumpings that the Plaintiff experienced from United Airlines and its operating partner Lufthansa. In the first two incidents, on the same day in late June 2021, the Plaintiff was ejected from a domestic United flight from San Francisco to Phoenix, for no valid reason that United has yet provided. United then booked him on a flight 4.5 hours later, and then bumped the Plaintiff from that flight as well, telling the Plaintiff he was banned from United (however, he wasn't banned). In the third incident, about a month later, the Plaintiff was traveling to Dubai from San Francisco via Frankfurt in late July 2021. The Plaintiff had a COVID-19 PCR test within the required timeframe that Dubai requires (72 hours), with a negative result. The COVID-19 test provided by Downtown Medical Group had the date of the test (July 22nd) but no timestamp. As a result, the Lufthansa representative denied the Plaintiff boarding his flight in Frankfurt to Dubai. While the Downtown Medical Group not meeting international standards caused the Lufthansa representative to deny boarding to the Plaintiff, the Lufthansa representative could have done the math on maximum number of hours possible based on the date of test. Had the Lufthansa representative done so, the Plaintiff should have been allowed to board his flight to Dubai. As a result of the ejection and the rejection, the Plaintiff sustained significant cash damages in the form of extra expenses and much greater damages in terms of wasted time, business interruption, humiliation, and emotional distress.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

3

**ALLEGATIONS OF CONSPIRACY**

9. Upon information and belief, there are even more individual Defendants currently unknown to Plaintiff, who shall emerge with the benefit of legal discovery.

10. Plaintiff is informed and believes and thereon alleges that at all times material to this complaint, those individuals, in addition to acting for themselves individually, as well as for the benefit of their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

11. Plaintiff further alleges on information and belief that the acts and non-acts of each of the individual Defendants were fully ratified by each and all the Defendants.

12. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific individual Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

13. In addition, upon information and belief, beyond United Airlines, Lufthansa, and Downtown Medical Group, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

14. Plaintiff is informed and believes and thereon alleges that at times material to this Complaint, those corporate defendants, in addition to acting for themselves and for their own behalf, were acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

15. Plaintiff further alleges on information and belief that the acts and non-acts of each of the entity Defendants were fully ratified by each and all the Defendants.

16. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific entity Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

### ALLEGATIONS OF RATIFICATION

17. Beyond the conspiracy, United Airlines also ratified its operating partner Lufthansa's acts. (The Plaintiff wrote to United Airlines about what occurred, hoping Lufthansa's partner United would help the Plaintiff get Lufthansa to fix the situation and compensate him). United declined to participate and/or to communicate with Lufthansa, and in doing so, ratified Lufthansa's acts.

### NARRATIVE AND SUMMARY OF FACTS

**i.)** **The First Wrongful Ejection followed by a Bumping**

18. The First Wrongful Ejection and bumping ("the first Bumping") is summarized in Exhibit A,

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

Letter to United Airlines.

19. On June 26, 2021 on an early morning flight from San Francisco to Phoenix that had not yet departed ("the First Flight") the Plaintiff was properly masked and conforming to all crew instructions. The Plaintiff was heading to Phoenix to see his mother and have family time.

20. The Plaintiff had arrived at the airport two hours before the flight. The Plaintiff admits that on two occasions, while the aircraft was parked at the gate, his mask briefly slipped under his nose (but not his mouth). Twice, a male flight attendant pointed this out, and the Plaintiff immediately complied each time by pushing his mask up to fully cover his nose as well.

21. Later, the plane began to taxi towards the runway for takeoff, and the same flight attendant made a comment to the Plaintiff as he walked by. The Plaintiff softly made a trivial and harmless joke that that caused the two passengers to the left of him to laugh.

22. No one expressed any objection to the Plaintiff about his joke which did not involve any hazard to the airline and was neither sexually nor ethnically invidious, nor did anyone complain about the Plaintiff.

23. Perhaps three minutes after this, the airplane turned around and taxied back to the gate.

24. The Plaintiff was summarily ejected from the aircraft, without a reason being given.

25. A United representative met the Plaintiff at the gate, apologized and said that she had booked the Plaintiff on the next available flight, which was about four and a half hours later. The Plaintiff asked the United representative why he was kicked off the flight.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

6

26. The representative said she didn't know the details, except that apparently someone had complained about the Plaintiff.

27. The representative said she was going to attempt to upgrade the Plaintiff on the next flight.

28. (The Plaintiff would have preferred to have been on the original flight, of course)

29. After almost four (4) hours of waiting at the airport, the same representative found the Plaintiff near the departing gate of his new flight.

30. The United representative informed the Plaintiff that he was banned from United, and that United had cancelled his new ticket, too ("the second Bumping").

31. Despite urgent inquiries from the Plaintiff, no explanation for the ban was offered. The Plaintiff notes that the ban was announced about four hours *after* United had apologized, rebooked the Plaintiff, handed him a new boarding pass, and told him he would likely be upgraded on the next flight to make his later travel a little more comfortable.

32. The Plaintiff ended up wasting about 16 hours of his day and having to purchase another ticket travelling that night, with several significant further ramifications.

33. The Plaintiff subsequently made a demand on United for compensation under 14 CFR 250.5 (a)(3) for the standard compensation of $1,550 for the first bumping/ejection.

34. The Plaintiff also mentioned the second bumping/cancellation ("the Bumping"), for which he believes he is due another statutory penalty (standard compensation) of $1550 under 14 CFR 250.5 (a)(3).

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

35. The statute states that that is the minimum amount of compensation due for each of these bumpings.

36. The statutory penalties due ($3100) for these two flights do not address the Plaintiff's other causes of action. (The Plaintiff hopes that when United's counsel is reading these pleadings, that counsel shall instruct that first check of $3100 to be sent to Plaintiff while the rest of Plaintiff's issues are being adjudicated. This will narrow our issues)

37. Thus far, United has failed and refused to compensate the Plaintiff for the two bumpings above, in violation of federal law.

38. On or about December 1, 2021, Connie from United called the Plaintiff not to arrange compensation, but instead, as she said, to provide information to the Plaintiff. The first information Connie shared was that the Plaintiff had had two mask violations.

39. The Plaintiff was aware of that, and he pointed out to Connie that those alleged violations (where the mask slipped off the bridge of his nose, as masks do for the great majority of all passengers on each and every United flight) occurred while the equipment was parked at the gate, well before taxi-ing and the Plaintiff's ejection.

40. The two brief and alleged violations (that the Plaintiff admits did occur) could not possibly have been the reason for the Plaintiff's ejection. The door of the plane was still open and passengers were still boarding. Were those the reason, the plane would not (quite a bit later) have taxied and almost taken off.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

8

41. In a Kafkaesque touch, Connie, who had told the Plaintiff she was calling not to compensate him but rather to provide information, then informed the Plaintiff that she had a security report with further details. The Plaintiff asked for the details. Connie then informed the Plaintiff that she was not at liberty to share the details with the Plaintiff. Apparently, the "information" that Connie called the Plaintiff to share was that she had further information that she could not share.

42. Connie informed the Plaintiff that the only way he could get that information was via a legal process. Essentially, United called the Plaintiff and almost demanded that the Plaintiff sue United Airlines. (In Connie's defense, she first suggested a subpoena, which the Plaintiff, a legal layperson, cannot easily issue)

43. The Plaintiff was deeply humiliated by his public ejection from the flight as it conveyed to the other passengers that he had engaged in misconduct, placing the Plaintiff in a false light.

44. The Plaintiff was publicly humiliated; an entire day of his time was wasted; he did not arrive at his destination to fulfill his plans; he had to purchase another more expensive airline ticket. The Plaintiff was and is upset over these issues.

45. Despite the Plaintiff's fondness for United Airlines, it is simply unacceptable not to address these issues and compensate the Plaintiff appropriately for damages sustained.

46. The Plaintiff has commenced this lawsuit in response. The Plaintiff is entitled to sue to recover compensatory but not punitive damages. *Hansen v. Delta Airlines*, No. 02 C 7651 (N.D. Ill. Mar. 17, 2004), *Cordero v. Cia Mexicana De Aviation, S.A.* 681 F.2nd 669 (9th Cir. 1982).

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

9

### ii.) The Second Day with a Wrongful Ejection/Rejection – Third Bumping

47. On July 24, the Plaintiff had booked flights from San Francisco to Frankfurt (on United) and then from Frankfurt to Dubai on United's partner Lufthansa ("the Second Flight").

48. Prior to boarding his first flight, the Plaintiff, consistent with regulations, obtained a Covid-19 test from Downtown Medical Center which showed that he tested negative for Covid-19.

49. The Plaintiff's appointment at Downtown Medical Group was on Thursday, July 22nd, at 2:10 pm Pacific time (Exhibit B).

50. Falling below the professional standard of care, Downtown Medical Center failed to time-stamp the Plaintiff's Covid test, as further summarized in Exhibit C, Letter to Downtown Medical Center.

51. United allowed the Plaintiff to proceed on his first flight (San Francisco to Frankfurt) since the date stamp of the Covid test showed that it had taken place within the required 72 hour window – indeed, the Plaintiff's appointment was within 48 hours of his flight. Even if his appointment had been at 12:01 am on July 22nd, 2021, it would have been within 62 hours of his flight.

52. When the Plaintiff went to board his connecting flight from Frankfurt to Dubai, however, the Lufthansa manager at the gate would not let the Plaintiff board the flight, because, per the manager, the Downtown Medical Group test did not meet international standards (as it lacked a timestamp, so the Lufthansa manager could not calculate the hours).

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

10

53. The Plaintiff offered several ways to prove that he had taken his test within the required timeline, including his appointment time (Exhibit B) and going through his emails that had further details. However, the Plaintiff thought that logic was most compelling, as his test result showed July 22nd, 2021, and his departing flight was on July 24th, 2021. Therefore, even if his test was at 12:01 am, and his departing flight at 11:59 pm, the difference could not have been more than 71.99 hours.

54. Thus, despite Downtown Medical Group's test not meeting said international standards, Lufthansa, United's partner including on this code-share flight, erred in denying boarding to the Plaintiff.

55. Once again, the Plaintiff was deeply humiliated by his public ejection from the flight as it conveyed to the other passengers that he had engaged in misconduct, placing the Plaintiff in a false light.

56. The Plaintiff's distress was aggravated by Lufthansa when a Lufthansa employee threatened to have him arrested if he threatened to sue Lufthansa. The Plaintiff was confronted with the possibility of false imprisonment in a foreign jail which fell far short of Lufthansa's vaunted customer service standards. (Exhibit D has more details over the Lufthansa bumping).

57. Lufthansa failed and refused to compensate the Plaintiff for the bumping part of his issues and causes of action, pursuant to 14 CFR 250.5 (a)(3)._(The Plaintiff hopes that when Lufthansa's counsel is reading these pleadings, that counsel shall instruct that check of $1550 to be sent to Plaintiff while the rest of Plaintiff's issues are being adjudicated. This will narrow our issues).

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

58. The Plaintiff was forced to travel back to San Francisco, spent money on hotels and Ubers and another COVID-19 test, and another roundtrip ticket.

59. It's worth noting that more recently, the Plaintiff has now received reimbursements from both Downtown Medical Group and United for some of his costs.

60. The Plaintiff was also separated from his luggage for a few weeks, necessitating a number of purchases. Beyond the false light humiliation and the Plaintiff's distress over these occurrences, and the cash invested by the Plaintiff in the extra expenses, the biggest impact to the Plaintiff was the needless waste of days of his time, and the corresponding business interruption.

61. The Plaintiff gets amazing service from United 99% of the time and has been extremely happy with United Airlines as a method of transport, and how he is treated most of the time.

62. United Airlines' marketing slogan is that we are "Flying the friendly skies." Indeed, they are friendly most of the time, but were not on these two days, not for the Plaintiff.

63. Rejections, ejections, and bumpings have gotten the public's attention recently, including with a United Airlines incident where a Chinese man was forcibly ejected from a Chicago flight he was bumped from. Hundreds of millions of people have watched the video of him getting dragged off the plane and beaten up, with his nose bloodied in the process. Laws and procedures have changed to protect and compensate consumers who experience bumpings, ejections and rejections.

64. Luckily, the Plaintiff was not physically assaulted by the flight attendant on the First Flight, by the United Representative, or the Lufthansa manager.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

65. However, the Plaintiff was emotionally assaulted by these incidents, verbally assaulted, threatened with jail, publicly humiliated, and apparently banned from flying on United for life with no reason.

66. The Plaintiff's emotional distress was severe – he might rather have been dragged off the plane with a bloodied nose rather than face what he endured. Each time, recovering from the emotional distress and assaults took about a week after reaching his destination, causing the Plaintiff to suffer and lose two additional weeks of what would otherwise have been experiences with his family and productivity on work projects.

67. What these two incidents, less than a month apart, also have in common is poor training of employees by partners United and Lufthansa and disrespect for customers as well as a willingness to humiliate and stigmatize good customers by subjecting them to arbitrary and coercive ejections, rejections, bumpings, and threats.

68. In order to right the scales of justice, the Plaintiff has had to file this legal complaint. The Plaintiff is suing in part to vindicate the rights of obedient and orderly frequent flyers like himself.

## DEMAND FOR JURY TRIAL

69. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

70. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

---

## COUNT I

### (Breach of Contract – United)

71. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

72. By arbitrarily ejecting the Plaintiff from the First Flight, United breached its contract of common carriage.

73. As a proximate result of United's breach of contract, the Plaintiff has sustained losses including one 14-hour day and increased travel expenses. All damages and amounts to be fully proven at jury trial.

74. By arbitrarily ejecting the Plaintiff from the Second Flight, United and its partner Lufthansa breached the Plaintiff's contract of common carriage. (It was a United ticket operated by United's partner Lufthansa, and United later ratified the Lufthansa manager's acts).

75. As a proximate result of the breach of contract, the Plaintiff has sustained losses as categorized above. All damages and amounts to be fully proven at jury trial.

76. The contractual breaches by United and Lufthansa are interrelated because of common and inadequate training and standards enacted and imposed by these channel partners which place their customers at risk. In effect, each partner has ratified the breach of the other partner, making each partner liable for both ejections.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

14

## <u>COUNT II</u>

### (Breach of Contract – Lufthansa and Downtown Medical Group)

77. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

78. By providing the Plaintiff with a COVID-19 PCR test that did not have a timestamp, Downtown Medical Group breached its contract with the Plaintiff impliedly-in-fact, and possibly expressly as well.

79. But for Downtown Medical Group's breaches, the Plaintiff would not have been rejected from boarding the Second Flight, and would not have sustained the various damages as outlined above. All damages and amounts to be fully proven at jury trial.

80. Despite Downtown Medical Group's non-compliance, the Plaintiff had the information to prove that his test timing met Dubai's requirements. Thus, Lufthansa erred in rejecting the Plaintiff, also breaching its contract with the Plaintiff, including its contract of carriage.

81. As a proximate result of Lufthansa's breaches, the Plaintiff has sustained significant losses, to be fully proven at jury trial.

82. The contractual breaches by United and Lufthansa are interrelated because of common and inadequate training and standards enacted and imposed by these channel partners which place their customers at risk. In effect, each partner has ratified the breach of the other partner, making each partner liable for both ejections.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

**COUNT III**

**(Breach of Contract – Downtown Medical Center)**

83. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

84. Alternatively and conjunctively, Downtown Medical Center entered into a contract with the Plaintiff to provide evidence of Covid 19 testing for the express purpose of facilitating the Plaintiff's international flight.

85. Downtown Medical Center materially breached its contract by the ministerial and administrative omission of a time-stamp on the test, even though the Center knew or should have known that such a stamp was necessary for facilitating travel.

86. As a direct and proximate result of Downtown Medical Center's breach of contract Lufthansa the Plaintiff has sustained losses that shall be fully proven at jury trial.

**COUNT IV**

**Breach of the Covenant of Good Faith & Fair Dealing - United & Lufthansa**

87. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

88. Every contract entered into in Illinois contains an implied covenant of good faith and fair dealing that prohibits either party from exercising contractual discretion in such a way as to deny a counterparty the benefit of its bargain.

89. Pleading in the alternative, even if United and Lufthansa did not breach their contracts of common carriage with the Plaintiff, both partners abused their contractual discretion in ejecting and rejecting the Plaintiff from his purchased Flights.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

16

90. As a proximate result of United and Lufthansa's breached covenant of good faith and fair dealing, the Plaintiff has sustained losses and damages, that he will fully prove at jury trial.

## COUNT V

### (False Light Publicity - United & Lufthansa)

91. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

92. Per *Brennan v. Kadner*, 351 Ill.App.3rd 963 (1st.Dist. 2004) both United and Lufthansa portrayed the Plaintiff publicly, in a false light, by having him ejected and rejected from the First Flight and the Second Flight. The ejection and denial of boarding implied some serious departure from proper or safe behavior on both flights.

93. In the First Bumping ejection, the Plaintiff was publicly humiliated, and was embarrassed. Any reasonable person in that situation would have felt humiliated and embarrassed. Beyond the insinuation of having done something wrong, imagine feeling responsible for an entire plane-load of passengers being significantly delayed, apparently (though not actually) due to your actions.

94. In the Second Bumping, the Plaintiff experienced more humiliation as the United agent loudly bumped him and banned him in front of other passengers. The First Bumping was far worse, however.

95. In the Second Flight rejection and Third Bumping, the Plaintiff was initially frustrated. However, when the Lufthansa manager began to threaten to have the Plaintiff arrested, the Plaintiff retreated from the boarding area, feeling wronged but also embarrassed by the threats

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

and what people might think.

96. The Lufthansa Manager acted maliciously and/or recklessly in disregard of the truth of the Plaintiff's portrayal.

97. The Plaintiff does not yet know the facts for the first flight rejection, and wishes to make a false claim, especially in a verified legal complaint, but leaves open the possibility that the mystery person or people responsible for his ejection on the First Flight also acted maliciously towards him or recklessly with disregard for the truth.

## COUNT VI

### Promissory Estoppel - United

98. The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

99. When the Plaintiff returned to the gate after being ejected from the Flight, United's Representative unconditionally promised that the Plaintiff would be rebooked as quickly as possible ("the Promise").

100.      Indeed, United's Representative handed the Plaintiff a boarding pass shortly thereafter, for the next flight, about 4.5 hours later, and was talking about upgrading the Plaintiff, not that that would have made the situation right… but it was and is a sign that the Plaintiff had done nothing wrong. (The United Representative could not explain what had happened with the ejection and why)

101.      United's Representative knew or should have known that the Plaintiff would rely on the Promise.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

18

102.     The Plaintiff in fact relied on the Promise to his detriment by not making other travel arrangements immediately.

103.     As a proximate result of United's breach of the Promise, the Plaintiff has sustained losses to be fully proven at jury trial.

## COUNT VII

### (Intentional Infliction of Emotional Distress – Lufthansa)

104.     The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

105.     Defendant Lufthansa acted intentionally in threatening to have the Plaintiff arrested for suggesting he might sue Lufthansa.

106.     Defendant Lufthansa's conduct was outrageous in threatening the Plaintiff with arrest.

107.     Defendant Lufthansa intended to inflict extreme emotional distress because the very point of the threat was to terrorize the Defendant and to prevent him from suing.

108.     Defendant Lufthansa's threat in fact caused the Plaintiff to experience severe emotional distress.

## COUNT VIII

### Negligence under the Federal Aviation Act

109.     The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

110.     The Federal Aviation Act of 1958, 48 U.S.C. 40102-49105, preempts all state standards of negligence and defines the standard of care for airlines. *Abdullah v. AM. Airlines,*

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

19

*Inc.,* 181 F.3rd 363, 367 (3rd Cir. 1999).

111.     Accordingly, federal law is the appropriate source of the standard of care for airlines.

112.     The airline standard of care for bumping passengers is contained in the Tickets Act, 425 (e) of the FAA Reauthorization Act of 2018, Pub. L. 115-254 October 5, 2018, including a Final Rule issued by the Department of Transportation (86 FR 2534), taking effect in April 2021 (86 FR 2534, pages 2534-2539, Docket DOT-OST-2020-0251, RIN 2105-AE81, Document Number 2020-28001).

113.     United failed to meet the federal standard of care in the First Bumping in at least two ways: (a) bumping the Plaintiff after he had been accepted at the gate and in fact boarded the aircraft and, (b) failing to offer the Plaintiff a rebooking and statutory compensation.

114.     United failed to meet the federal standard of care in the Second Bumping, by failing to offer the Plaintiff a rebooking, and by failing to offer or pay the Plaintiff his legally-required statutory compensation.

115.     As the Plaintiff's conduct was exemplary and obedient, his ejection should be subject to the bumping standard of care as opposed to the exercise of security protocols.

116.     As a proximate result of the Defendant's failure to meet the federal standard of care, the Plaintiff has suffered embarrassment, humiliation, distress, inconvenience, and anxiety. The Plaintiff has lost time with his family, time to work, and has experienced lost income from business interruptions.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

20

**COUNT IX**

**Violations of 14 CFR 250**

117.        The Plaintiff realleges paragraphs 1-70 as if fully set out herein.

118.        The Federal Aviation Act of 1958, 48 U.S.C. 40102-49105, preempts all state standards of negligence and defines the standard of care for airlines. *Abdullah v. AM. Airlines, Inc.,* 181 F.3rd 363, 367 (3rd Cir. 1999).

119.        Accordingly, federal law is the appropriate source of the standard of care for airlines.

120.        14 CFR 250 sets out compensation for involuntarily bumped passengers.

121.        United failed to meet the federal standard of care in the First Bumping in at least two ways: (a) bumping the Plaintiff after he had been accepted at the gate and in fact boarded the aircraft and, (b) failing to offer the Plaintiff a rebooking and statutory compensation.

122.        In these errors, United is also in violation of 14 CFR 250.

123.        United failed to meet the federal standard of care in the Second Bumping, by failing to offer the Plaintiff a rebooking, and by failing to offer or pay the Plaintiff his legally-required statutory compensation.

124.        In these errors, United is once again in violation of 14 CFR 250.

125.        Lufthansa failed to meet the federal standard of care in the Third Bumping, by failing to offer the Plaintiff a rebooking, and by failing to offer or pay the Plaintiff his legally-required  statutory compensation.

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

21

126.     In these errors, Lufthansa was and is in violation of 14 CFR 250.

127.     As the Plaintiff's conduct was exemplary and obedient, his ejection should be subject to the bumping standard of care as opposed to the exercise of security protocols.

128.     As a proximate result of the Defendants' failure to meet the federal standard of care, and of the Defendants' violations of 14 CFR 250, the Plaintiff has suffered embarrassment, humiliation, distress, inconvenience, and anxiety. The Plaintiff has lost time with his family, time to work, and has experienced lost income from business interruptions. The Plaintiff has not received his statutorily-required compensation from Defendants, either.

129.     All allegations and damages to be fully proven at jury trial.

## **PRAYER FOR RELIEF**

(a) As to Count I for all damages proximately caused by the Defendants Lufthansa and United breaches of contract;

(b) As to Count II for all damages proximately caused by the Defendants Lufthansa and United breaches of contract;

(c) As to Count III for all damages proximately caused by the Defendants Lufthansa and United breaches of contract;

(d) As to Count IV for all damages proximately caused by the Defendant United's breach of the Promise and that the Defendant be estopped to deny liability therefor;

(e) As to Count V for all damages proximately caused by the Defendants United and Lufthansa's breaches of the covenant of good faith and fair dealing;

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

(f) As to Count VI for all damages proximately caused by the Defendants United and Lufthansa subjecting the Plaintiff to false light publicity and for the imposition of exemplary damages in an amount sufficient to punish and deter the Defendants from subjecting customers to false light publicity in the future;

(g) As to Count VII for all damages proximately caused by the Defendant Lufthansa's infliction of severe emotional distress on the Plaintiff as well as for the imposition of exemplary damages sufficient to punish and deter the Defendant from subjecting customers to severe emotional distress in the future;

(h) As to Count VIII for all damages proximately caused by Defendant United's failure to meet the FAA standard of care for bumping (e.g. no fault discretionary removal) of passengers in the First Bumping and the Second Bumping;

(i) As to Count VIII, also for all damages proximately caused by Defendant Lufthansa's failure to meet the FAA standard of care of passengers in the Third Bumping;

(j) As to Count IX, also for all damages proximately caused by Defendants' violations of 14 CFR 250 in all three Bumpings;

(k) For reasonable legal and paralegal fees and the costs of this action and;

(l) For the reasonable value of the Plaintiff's time in representing himself (*quantum meruit*)

(m) For such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED on January 16th, 2022

Carl A. Wescott, *pro se*

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

23

**VERIFICATION**

I, Carl A. Wescott, under penalties provided by law pursuant to section § 1-109 of the Code of Civil Procedure, as well as the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Carl A. Wescott

**PLAINTIFF'S LEGAL COMPLAINT FOR VIOLATIONS OF 14 CFR § 250 (INVOLUNTARY BUMPING); VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018); BREACH OF CONTRACT; BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; FALSE LIGHT PUBLICITY; PROMISSORY ESTOPPEL; and INTENTIONAL INFLICTION OF E.D.;**

24

October 28th, 2021



United Airlines, Inc.
233 S. Wacker Drive
Chicago, IL 60606
United States
Laura.mandile@unitedairlines.com
Tobjorn.evnquist@unitedairlines.com

Re: claim for compensation for two involuntary deboardings

Dear Sir or Madam:

I am still, in general, a very happy United customer (Premier 1k, HL989459), and in fact just hit 2 million miles on United.

The travel operations remain superb and recently, for the most part, I've been experiencing even better service than I've ever had on United – and it was pretty darn good, prior.

I recently had two experiences that were subpar (to say the least) while traveling on United tickets – one is a Lufthansa issue that I've written Lufthansa about.

The other is that I was recently kicked off a United flight (and then had another cancelled) while having done nothing wrong. The relevant vernacular is "involuntary deboarding," which occurred twice in one day with no valid reason cited in each case, and in fact, no reason at all cited.

The purpose of this letter is to submit a claim, pursuant to 14 CFR 250 for compensation due to me, as dictated by federal law, in connection with my involuntary deboarding of the 8:30 am flight from SFO to PHX (my confirmation number ANNJ8G) on Saturday, June 26th, 2021, and then a second involuntary deboarding (described below, for the 1:10 pm flight). Exhibit A has the purchase information and eTicket number of my originally purchased flight, that 8:30 am flight, which was my first involuntary deboarding by United that day (and Exhibit B, the second one).

I boarded the plane early for the 8:30 am flight and took my seat. Twice over a period of perhaps 30 minutes, my mask dropped off my nose, and twice, the male flight attendant, whose name I do not know, requested that I correct that, which I did. While we were taxiing toward the runway for takeoff, the same flight attendant, walking by, noted that I was in compliance with my mask covering my nose as well. I affirmed that, and affirmed that I would remain in compliance, and then made a joke, which got laughs from the passengers to my left.

1

I've always been in fairly strict compliance with the federal mask mandates and have frequently noted that many other passengers are not. I was in compliance at this point and re-affirmed that I would remain in compliance.

Nevertheless, our plane turned around, taxi'd back to the gate, and I was involuntarily deboarded.

I was on my way to a family event in Phoenix that I would now miss, so obviously it was even more upsetting than this would ordinarily be. A United representative met me at the gate and said she had put me on the next flight (Exhibit B).

I asked her what had happened and she was not sure, except that she said another passenger had complained about me with a phone call. That seemed strange to me, and I asked her if she was sure about that, and she said no, but that she would find out why I was involuntarily deboarded. (It seemed strange, among other reasons, that someone could issue a valid complaint while not being in compliance with rules about cell phones)

The lady was apologetic about her lack of facts and lack of knowledge and said she would try to upgrade me for the next flight (as if that would make up for missing the family event I was going to).

Some time later that morning, a few hours later (near noon), the same United representative found me near the departing gate for the 1:10 pm flight from San Francisco to Phoenix, and told me that my ticket was being cancelled, I was being involuntarily deboarded, and that I was now banned from United. This was my second involuntary deboarding by United that day.

I asked her why, and she said she didn't know, and that she had been told to cancel my flight, deboard me from it, prevent me from boarding with my valid ticket that she had earlier provided me, and to inform me that I was banned from United.

I found that odd, given that I'm a decent customer and had done nothing wrong. At this point, I'd been at SFO for over 6 hours. The lady could not cite a reason that I was kicked off the original flight, nor a reason my new ticket was being cancelled (for my second deboarding as well), nor that I was apparently being banned from United (permanently or not).

At this point, I had completely missed the family event I was traveling for. I ultimately decided to go home anyways. There aren't too many options for travel on Saturday evenings. I ultimately purchased another United ticket, so apparently I wasn't banned from United as the lady had said (Exhibit C).

I took that flight without incident and ultimately made it home over 12 hours after my original anticipated arrival for the family event that I completely missed.

Unfortunately, my experience on the captioned original flight somewhat paralleled (at least emotionally, knowing I was being kicked off a flight for no reason and would miss the event I was traveling to) the horror of United Flight 4311 in which a physician was randomly bloodied and brutalized, to international revulsion.

2

Luckily, I avoided being assaulted and physical abuse by following all orders, including the one to deplane, however irrational they were.

You can imagine how shocking and unsettling this treatment would be to a longtime United customer, especially one traveling to a family event that I would now miss.

It would make more sense if there was a reason I was kicked off the original flight (poor sense of humor perhaps?). It would make more sense if there was a reason my second flight was cancelled (just for me... the flight did go off. Some form of discrimination, perhaps?). It would make more sense if there was a reason I was supposedly banned from United (luckily, I apparently was not, and was just being misinformed over and over from a lady who couldn't cite any fact, reason, law, rule, or regulation for my being treated poorly).

In short, United agreed to transport me to Phoenix. United then delphically exercised its broad discretion to eject me and offered to place me on another flight. United then, without explanation, repudiated this second commitment after I had waited four+ more hours. That's two involuntary deboardings in a row.

I have since learned that the FAA preempts common law remedies, much to the benefit of United as the value of my time and related opportunity costs would have vastly exceeded statutory remedies for breaching my contract of carriage. United agreed to assist me with alternate transportation, then repudiated that agreement. Under the circumstances, if I was being involuntarily deboarded due to oversold tickets, I would unambiguously be entitled to $873.60 (with a cap of $1,550 each time) in compensation under 14 CFR 250.5, per deboarding, or $1737.20).

Of course, each of these experiences was way worse than being deboarded due to an oversold flight, so presumably the compensation due should be higher.

I have been an appreciative and loyal customer and, I am trying to be a good sport about an aberrant experience during times that are challenging for all of us. I am sure I will have good experiences on United flights in the future, and that this is simply a series of mistakes when people were having bad days. I remain a loyal United customer.

I respectfully and emphatically submit, however, that I am due explanations, as well as compensation for this experience which represents a shocking departure from your usual lofty customer service standards.

Thank you in advance for finding a fair and just resolution of this unfortunate incident so we can both move on.

Sincerely,

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688

3

 Gmail

carl wescott <carlwescott2021@gmail.com>

**eTicket Itinerary and Receipt for Confirmation ANNJ8G**
1 message

United Airlines, Inc. <Receipts@united.com>                    Sun, Jun 13, 2021 at 11:27 AM
To: CARLWESCOTT2021@gmail.com



Sun, Jun 13, 2021

# Thank you for choosing United.

A receipt of your purchase is shown below. Please retain this email receipt for your records.

Note: There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

Confirmation Number:

# ANNJ8G

Sat, Jun 26, 2021                                              Sat, Jun 26, 2021

## 08:30 AM                                              ## 10:23 AM

San Francisco, CA, US (SFO)                                   Phoenix, AZ, US (PHX)

Traveler Details

WESCOTT/CARL
eTicket number: 0162352856864                          Seats: SFO-PHX -----
Frequent Flyer: UA-XXXXX459 Premier 1K®

Purchase Summary

Method of payment:                                          Visa ending in 4628
Date of purchase:                                           Sun, Jun 13, 2021

Airfare:                                                    87.44 USD
U.S. Transportation Tax:                                     6.56 USD
U.S. Flight Segment Tax:                                     4.30 USD
September 11th Security Fee:                                 5.60 USD
U.S. Passenger Facility Charge:                             4.50 USD

Total Per Passenger:                                       108.40 USD

Case 2:22-cv-01084-JCC Document #: 91-2 Filed 003/15/24 Page 30 of 41 PageID #: 2916

### Carbon Footprint

Your estimated carbon footprint for this trip is **0.12445 tonnes of CO2.**

You can reduce your environmental impact by participating in our CarbonChoice program which supports projects that reduce greenhouse gases. Learn more.

### Get ready for your trip

Visit the Travel-Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

### Fare Rules

Additional charges may apply for changes in addition to any fare rules listed.
NONREF/NOCHGS/NOCBBG/NOASR

### MileagePlus Accrual Details

| Carl Wescott | | | | | |
|---|---|---|---|---|---|
| Date | Flight | From/To | Award Miles | PQP | PQF |
| Sat, Jun 26, 2021 | 636 | San Francisco, CA, US (SFO) to Phoenix, AZ, US (PHX) | 968 | 88 | 0 |
| MileagePlus accrual totals: | | | 968 | 88 | 0 |

### Baggage allowance and charges for this itinerary

| Origin and destination for checked baggage | 1st bag charge | 2nd bag charge | 1st bag weight and dimensions | 2nd bag weight and dimensions |
|---|---|---|---|---|
| Sat, Jun 26, 2021 San Francisco, CA, US (SFO) to Phoenix, AZ, US (PHX) | 0 USD | 0 USD | 70lbs(32kg) - 62in(157cm) | 70lbs(32kg) - 62in(157cm) |

Baggage check-in must occur with United or United Express, and you must have valid MileagePlus Premier® 1K® membership at time of check-in to qualify for waiver of service charges for up to three checked bags (within specified size and weight limits).

### Important Information about MileagePlus Earning

• Accruals vary based on the terms and conditions of the traveler's frequent flyer program, the traveler's frequent flyer status and the itinerary selected. United MileagePlus® mileage accrual is subject to the rules of the MileagePlus program

• Once travel has started, accruals will no longer display. You can view your MileagePlus account for posted accrual

• You can earn up to 75,000 award miles per ticket. The 75,000 award miles cap may be applied to your posted flight activity in an order different than shown

• Accrual is only displayed for MileagePlus members who choose to accrue to their MileagePlus account.

• Our Premier Program changes January 1, 2020. If your itinerary includes travel with a scheduled departure in 2020, you may see our old Premier accrual metrics if

1) you booked prior to May 1, 2019 and are viewing an emailed receipt or 2) you booked prior to August 1, 2019 and are viewing a receipt online. The terms and conditions of Premier qualification can be found at united.com/qualify.

### eTicket Reminders

• **Check-in Requirement** - Bags must be checked and boarding passes obtained at least 45 minutes prior to scheduled departure. Baggage will not be accepted and advance seat assignments may be cancelled if this condition is not met.



Gmail

carl wescott <carlwescott2021@gmail.com>

### Your reservation has been canceled (ANNJ8G)
1 message

United Airlines, Inc. <Receipts@united.com>
To: CARLWESCOTT2021@gmail.com

Sat, Jun 26, 2021 at 11:49 PM

# UNITED

Sat, Jun 26, 2021

# Your reservation has been canceled.

Please keep this email receipt and your confirmation number. You may have future flight credit. Make sure you visit our Important notices page for the latest information on travel flexibility, restrictions, and your ticket, as situations are changing due to coronavirus.

If you have a flight credit, you'll need to return to this reservation when you are ready to travel again. Just enter the confirmation number on My Trips, where you can also see the ticket value, expiration date and if change fees are waived based on a travel waiver.

Confirmation Number:

# ANNJ8G

Sat, Jun 26, 2021

# 01:10 PM

San Francisco, CA, US (SFO)

Sat, Jun 26, 2021

# 03:10 PM

Phoenix, AZ, US (PHX)

Flight Operated by Skywest Airlines dba United Express.

Traveler Details

WESCOTT/CARL
eTicket number: -----
Frequent Flyer: UA-XXXXX459 Premier 1K®

Seats: SFO-PHX 07A

Purchase Summary

Method of payment:
Date of purchase:

Visa ending in 4628
Sun, Jun 13, 2021

| | |
|---|---|
| Airfare: | 87.44 USD |
| U.S. Transportation Tax: | 6.56 USD |
| U.S. Flight Segment Tax: | 4.30 USD |
| September 11th Security Fee: | 5.60 USD |

UNITED

*Exhibit C*

Thu, Oct 28, 2021

# Thank you for choosing United.
A receipt of your purchase is shown below. Please retain this email receipt for your records.

Note: There are travel restrictions in place due to the coronavirus. Check our Important notices page for the latest updates

Get ready for your trip: Visit the Travel-Ready Center, your one-stop digital assistant, to find out about important travel requirements specific to your trip.

Confirmation Number:

# BRMD7M

Sat, Jun 26, 2021
## 06:30 PM
San Francisco, CA, US (SFO)

Sat, Jun 26, 2021
## 08:32 PM
Phoenix, AZ, US (PHX)

Flight Operated by Skywest Airlines dba United Express.

## Traveler Details

WESCOTT/CARL
eTicket number: 0162355097385
Frequent Flyer: UA-XXXXX459 Premier 1K®

Seats: SFO-PHX -----

## Purchase Summary

Method of payment:
Date of purchase:

Visa ending in 4628
Sat, Jun 26, 2021

| | |
|---|---|
| Airfare: | 189.77 USD |
| U.S. Transportation Tax: | 14.23 USD |
| U.S. Flight Segment Tax: | 4.30 USD |
| September 11th Security Fee: | 5.60 USD |
| U.S. Passenger Facility Charge: | 4.50 USD |

Total Per Passenger:

218.40 USD

Total:

218.40 USD

1/5



EXHIBIT B

**Appointment Summary**



Your order # is **489393**.

Date & Time
**Thursday, Jul 22, 2021**
**02:10 PM**

Your test is at the following address:

**Downtown Medical Group**
**490 Post Street  Suite #900**
**San Francisco, CA,  94102**

Please bring your phone with you to the testing station.

If you need to change your scheduled time or cancel you appointment,
please use the links below:

✕ Cancel

Click here for directions to your testing location:

December 4th, 2021



Downtown Medical Group
490 Post St Suite 900
San Francisco, CA 94102

Re: damages caused by COVID-19 PCR test results not meeting intl. standards

Dear Sir or Madam:

The purpose of this communication is to assert a claim for damages arising out of a breach of contract and a breach of warranty of fitness for a particular purpose, in breach of the Song-Beverly Consumer Warranty Act, California Civil Code 1791, et seq., and the Illinois equivalent.

1. Underlying Facts

I paid Downtown Medical Group for a COVID-19 PCR test on July 22nd, 2021, for international travel to Dubai. You were expressly informed of my purpose in seeking the test. Dubai requires a negative COVID-19 PCR test for entry, with the sample taken no more than 72 hours prior to departure.

I obtained a negative test result but there was no time stamp, just a date.

This was deemed acceptable by United for the first leg of my trip, San Francisco to Frankfurt. However, in traveling from Frankfurt to Dubai, I was rejected due to my non-conforming PCR test results, which didn't have a timestamp. Without the timestamp, uit was not possible to calculate that I was under the 72 hours since my PCR test sample was taken.

As a result of your failure to conform to international standards, I had to fly back to San Francisco, get another COVID-19 test, and spend thousands of dollars more on a second roundtrip plane ticket, multiple more nights of hotel, ground transportation, and other costs. I was separated from my luggage for a significant amount of time, resulting in further costs and significant inconvenience. I suffered the consequences of business interruption for days, as my attorney will prove in court if necessary, with significant financial consequences.

Downtown Medical Group is liable for my direct and consequential damages.

1

## 2. Legal Principles

I entered into a simple contract with Downtown Medical Group and paid Downtown Medical Group to provide a COVID-19 PCR test that (at least impliedly-in-fact) would meet international standards. It did not. Your breach of contract provides consequential damages.

Your advertising COVID-19 tests on the web and elsewhere, given the circumstances, subjects you to liability for your consumer fraud in advertising and marketing. More specifically, you are in violation of California's False Advertising Law (FAL) (Business and Professions Code §§17500, et seq.), and the Illinois equivalent.

Your Covid-19 PCR certification ("the Certification") is a also a consumer good because it is "movable" within the definition of UCC (Uniform Commercial Code) 2-105. See *Gross v. Symantec Corp.*, No. C12-000154 CRB (N.D. Cal. 2012) (software is also a "good" under the UCC).

As a matter of California and Illinois law, your PCR test and the format of its results violated the warranty of fitness for a particular purpose. See, California Civil Code 1791, et seq. (Song-Beverly Consumer Warranty Act) and CACI 1232.

In short, your professionals were aware of the purpose of the test in my case and, indeed, your advertising is geared toward consumers who are embarking on international travel. As a matter of California and Illinois law, you warrant that your Certification is fit for that purpose. Downtown Medical Group breached its warranty by failing to conform to international standards and providing a timestamp.

Please note that Song Beverly also provides for the imposition of consequential damages, see sections 2714-2715. The breach of contract cause of action also provides for consequential damages, in both states I am considering filing in (Illinois, where your two co-defendants are headquartered, and California). This would include the value of my time and business opportunity costs during my unplanned multi-day hiatus flying all the way back to San Francisco and getting a new COVID-19 test that complied so I could get to and into Dubai, my original planned destination.

The consumer fraud count gives me exemplary (or punitive) damages.

I am aware that the PREP Act, 42 § 247d–6d, confers certain immunities in relation to errors in lab work that could signify a false positive or false negative in a test. I am not complaining about a false positive or false negative. I am complaining about the failure of your certification to conform to international standards. Besides my other claims in contract and tort, this is a false claims advertising and consumer fraud case.

I do not believe that the PREP Act was intended to license laboratories to engage in consumer fraud.

Alternatively and conjunctively, the failure to provide a time stamp would represent a willful and wanton departure from standards, taking the case out of PREP Act immunity.

## 3. Conclusion

Downtown Medical Group was expressly aware that I was embarking on an international trip and that I was seeking your testing and certification for that express purpose. The Downtown Medical Group web site encouraged and invited international travelers to utilize your testing and laboratory facilities for that purpose.

I contracted with Downtown Medical Group in reliance on your skill, judgment and professional experience in providing a certification that would comply with international standards. Downtown Medical Group failed to comply by not providing a time stamp which is an elementary requirement.

Despite my payment and full performance on my side, Downtown Medical Group breached the contract with me to (impliedly-in-fact) provide test results in a format that met the standards needed for international travel.

Your web site constituted false advertising to me as an Arizona and California consumer and in violation of consumer fraud statutes.

As a direct and foreseeable result of your breach of contract, noncompliance and breach of warranty, I have sustained direct and consequential damages both of which are compensable under the relevant statutes and the common law of both California and Illinois.

My damages include having to purchase a second roundtrip ticket to Dubai from San Francisco, extra nights of hotel, Ubers, another COVID-19 PCR test, replacement of necessities when separated from my luggage, and business interruption/the loss of multiple days of professional revenue. This does not include emotional distress and the humiliation of being rejected and prevented from getting to my Dubai destination.

Downtown Medical Group's liability is clear. I do not believe that statutory immunity may be invoked for this type of error which is clerical/administrative rather than scientific.

Including my extra out-of-pocket costs, lost time, and business interruption/lost revenues, my base damages are greater than US $10,000.

The attorneys I am talking to assure me that I will get an award at jury trial of many times that, given the expected punitive damages and other add-ons, as well as full reimbursement for my legal costs.

I do hope you'll fix this issue so that your other customers don't have to experience the extra costs and frustration that I experienced.

Thank you.

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688
CarlWescott2020@gmail.com

4

October 20th, 2021

EXHIBIT D

Lufthansa
P. O. Box 66143
Chicago, IL 60666
Customer.relations@lufthansa.com;
Detlef.kayser@dlh.de

Re: Involuntary Deboarding: Compensation Due

Dear Sir and Madam:

The purpose of this letter is to submit a claim, pursuant to 14 CFR 250.5(a)(3) for involuntary deboarding in connection with my Lufthansa flight from Frankfurt to Dubai, scheduled on July 25th, 2021.

I would also simultaneously like to register a complaint about Lufthansa customer service (from one individual) which was (most uncharacteristically) aggressively antagonistic.

By way of context, I'm a United/Star Alliance frequent flier, Premier 1k on United, 2 million miles and very happy with United Airlines. I see no reason that I won't hit 3 million and then 4 million miles in the upcoming decade+, even while flying other airlines.

I love SwissAir, United's partner in the StarAlliance as well, and have a very strong like for Lufthansa and trust in its operations. I appreciate the hospitality, too, at the Lufthansa lounges in Frankfurt and other airports.

I'm not at all a demanding passenger, usually engrossed in reading or movies, or asleep on flights. I'm on quite friendly terms with many of the flight attendants and operations staff whom I see frequently.

―――――――――――――――――――――――――――――――――

Now, here are the facts:

As I was flying from San Francisco to Dubai (via Frankfurt) on United/Lufthansa, I obtained a Covid-19 test from Downtown Medical Group in San Francisco to comply with regulatory requirements, on the afternoon of July 22nd, 2021. I had an appointment at 2:10 pm that day (July 22nd, 2021).

The test was taken within 48 hours of my 2:05 pm United flight from SFO to FRA on July 24th, 2021 (72 hours is the requirement, so I had an extra day of buffer). I will admit that my test did not have a timestamp, merely a date, but that would only have been relevant if I had taken the test three (3) days before my Lufthansa and/or United flight, not two (2). Dubai requires a negative PCR test for COVID-19 taken within 72 hours of departure. I understand

1

that the airlines enforce these rules for various countries, which is not easy, and also carries potential liability.

United Airlines exercised its discretion to fly me to Frankfurt based on the date of the test. The man in charge at the boarding gate in Lufthansa (tall, dark hair, glasses) denied me boarding. He would not allow me to show him my appointment time, call the test provider, or show him evidence of the time of the test from secondary sources (my cell phone). Since I had a valid and conforming (PCR) COVID-19 test there was no reason to have me involuntarily disboarded from the flight.

I ended up flying back to the US, getting another COVID-19 test, buying a new set of roundtrip flights to travel again a couple days later (as you can see from my travel records I cut and pasted from my United account, below).

At the point when I was being disboarded involuntarily, the man in charge would not give me his name. He would not give me information on his boss or superior. I wanted to try to reason with someone and get approval to travel.

I informed the gentleman I was going to take a picture of him for identification purposes. He told me that that was illegal in Germany, so I didn't take the picture.

I then told him that this was an unfortunate situation, that it would cost me thousands of dollars and days of my time, and that I would have to submit a claim or possibly a lawsuit if I was not paid reasonable compensation, the gentleman at the gate that refused to name himself then said:

"Then the police will come and find you and you will be arrested."

I was being ejected from a flight despite possessing an indisputably valid COVID-19 PCR test that lacked only a time stamp (indisputably valid as it was taken under 2 days or 48 hours before my flight) and threatened with imprisonment in a foreign jail for registering a civil complaint.

Because I've had many years of good experience flying with Lufthansa, I'm going to regard this incident as an outlier, an issue caused by one employee that may have been having a bad day. I will point out that in the lawsuit-happy USA, it is regarded as criminally extortionate to attempt to use threats of arrest to obtain a desired result in a civil matter.

But let's ignore all that, again, as an outlier and not reflective of Lufthansa's views, policies, nor procedures.

I was going to ask for reasonable compensation, and if that was denied, would have been forced to file a lawsuit to recover the damages caused to me, which include many thousands of dollars in extra expenses, days of my time wasted, and more in terms of consequential and secondary effects.

2

I have since learned that the FAA pre-empts common law remedies, much to the benefit of Lufthansa. Reviewing 14 CFR 250.5, Lufthansa did not arrange alternate transportation. Under the circumstances, I am unambiguously entitled to $1,550.00 in compensation under subsection (b)(3). The formula is clear and clearly applicable to my case.

That's way less than the damages to me, but if Lufthansa would kindly send me a check for US $1550, then we can both move on. I do appreciate the simplicity of this approach.

I am still a very happy United customer and I expect to have many more years of good experiences with Lufthansa, too.

Sincerely,

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688
carlwsoj@gmail.com

Sunday, January 16th, 2022

Clerk of the Court
United States District Court
District of Illinois - Northern District
Eastern Division
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, IL 60604

Dear Clerk:

I'm initiating a new legal complaint against three Defendants.

The basis for federal court is Plaintiff's allegations of two federal law issues and federal causes of action:

## THE FIRST LIES IN VIOLATIONS OF THE FEDERAL STANDARD OF CARE REFLECTED IN 14 CFR § 250 (INVOLUNTARY BUMPING);

## THE SECOND FEDERAL CAUSE OF ACTION IS IN VIOLATIONS OF SECTION 425(E) OF THE FAA REAUTHORIZATION ACT OF 2018 (PUB. L. 115-254, OCTOBER 5, 2018);

It turns out we have complete diversity of citizenship (28 USC 1332) as well, with the Plaintiff a citizen of Arizona, and no defendant a citizen of Arizona.

I hope and believe I've enclosed everything you and the court will need to file and docket the case:
- One Civil Cover Sheet
- Three Plaintiff's Legal Complaints
- One Request to Proceed *in forma pauperis*

I've enclosed a prepaid Priority Mail for you to hopefully send back to me whatever paperwork you like, including at least one stamped/endorsed legal complaint with case number.

If I left anything out or made any mistakes, would you kindly call me so I can send in whatever's missing?... or send me an email? My cell phone is +1 936 937 2688, and email below. Thanks so much. Sincerely,

Carl A. Wescott (carlwsoj@gmail.com)
8210 E. via de la Escuela
Scottsdale, AZ 85258

1